No. 20,998.

WILLIAM E. JACKSON, *Appellee,* v. THE KNIGHTS AND LADIES OF THE ORIENT and THE NATIONAL INDUSTRIAL INSURANCE COMPANY, *Appellants.*

OPINION DENYING A REHEARING OR A MODIFICATION OF THE DECISION.

SYLLABUS BY THE COURT.

1. BENEFICIARY ASSOCIATION—*Transfer of Assets—Liability of Transferee.* The liability of a company which attempted to reinsure the members of a fraternal beneficiary association, in an action against it for canceling for nonpayment of dues the certificate of a member to whom the association was indebted, held to depend upon whether the company had received from the association any funds applicable to that purpose.

2. SAME—*Burden of Proof.* In an action to require a corporation to pay a debt of a fraternal beneficiary association, because of having acquired all its assets, held that the burden of proof (subject to any special circumstances by which it might be shifted) is on the plaintiff to show that other than exempt assets were acquired by the defendant.

3. SAME—*Liability of Transferee.* In that situation liability of the defendant does not necessarily follow from the fact that after taking over the business of the association it received dues from its members, a part of which, under the association's by-laws, would have been apportioned to a general fund.

Appeal from Shawnee district court, division No. 1; ALSTON W. DANA, judge. Opinion denying a rehearing or a modification of the decision filed October 6, 1917. (For original opinion see *ante,* p. 383.)

*W. A. S. Bird,* and *Edwin D. McKeever,* both of Topeka, for the appellants.

*W. R. Hazen,* and *H. W. Page,* both of Topeka, for the appellee.

The opinion of the court was delivered by

MASON, J.: The judgment against one of the defendants having been reversed (*ante,* p. 383), the plaintiff files a petition asking a rehearing or a modification of the decision rendered.

1. The plaintiff's judgment against the Knights and Ladies of the Orient was based upon a verdict which implied findings that he had performed services for it as a medical officer for which he was entitled to receive $1428.75; that he had received $100 in cash and $300 by being credited with the dues of himself and a relative, upon their beneficiary certificates, up to December 31, 1912; that it had been agreed by the Orient company that as such dues accrued thereafter they should likewise be charged against his claim for services; that at the date named the Industrial Insurance Company acquired all the assets of the Orient company and undertook to assume liability to the holders of its beneficiary certificates, but afterwards canceled the certificates carried by the plaintiff by reason of the nonpayment of dues. His recovery against the Orient company, apart from interest, was for $1327.75, being equal to the total amount of his original claim, less only the $100 cash payment. In other words he was allowed to recover from the Orient company the full amount he had paid it as dues—$300. This allowance was permissible according to the authorities, on the theory of a rescission of the contract of insurance (29 Cyc. 103, 104), and in effect amounts to a setting aside of the credit of $300 on his account for services. He maintains that so far as concerns this part of his claim, the liability of the Industrial company is primary—that it results from its own conduct, and not from its succeeding to the debts of the Orient company—that this part of his action is practically an independent one for damages, and therefore that he should be allowed that much of a recovery against the Industrial company, regardless of whether or not it received any of the general fund of the Orient company.

We do not think the contention well founded. The cause of action against the Industrial company with respect to the $300, as shown by the petition, is based upon the refusal of that company to pay his assessments out of funds applicable to that purpose which it had received from the Orient company. If the Industrial company had received from the Orient company no assets excepting money belonging to the mortuary and beneficiary funds, it had nothing to apply to the plaintiff's dues, and committed no wrong in canceling his certificates for nonpayment, for we do not understand that there is any contention

that the Industrial company became liable to the plaintiff upon any agreement on its part to carry out the contracts of the Orient company. The plaintiff's right to recover against the Industrial company upon this part of his judgment against the Orient company, as well as upon the rest of it, depends upon whether there was a transfer of any funds other than those which were exempt from the demands of general creditors.

2. The jury found that about $3000 in money and about $5000 in securities were turned over by the Orient company to the Industrial company. In response to a question as to how much of the assets so transferred were beneficiary or mortuary funds and how much belonged to the general fund, if any, they answered: "Owing to the unbusinesslike manner in which the affairs of the order were conducted, it is impossible for us to say how these assets were distributed." The plaintiff urges that in view of the latter finding, upon the principle that exempt property loses its character as such when it is so commingled with nonexempt property that its identity can not be determined, all the assets transferred should be treated as a part of the general fund, or, at all events, that upon a further trial the burden of showing that none of it belonged to the beneficiary and reserve funds should be cast upon the defendant. It was shown that the Orient company maintained three funds; the beneficiary fund and the reserve fund, from which losses were to be paid; and the general fund, from which current expenses were to be met. It was not necessary that the precise amount in each at the time of the transfer should be ascertained. The question was as to the state of the general fund. One witness testified that it was entirely exhausted; another that it contained from $500 to $1000. The jury's answer did not amount to a finding that they were unable to decide whether there was anything in that fund, and the finding was not aided by the general verdict, since no instructions were given relating to the matter. To establish liability on the part of the Industrial company, as a part of his case, we deem it incumbent on the plaintiff to show that it received assets from the Orient company other than the beneficiary and reserve funds. This does not imply that a *prima facie* case may not be made out by circumstantial evidence, or that the plaintiff is to be denied the benefit of the rule regarding the commingling of

assets. Such matters must necessarily be determined by the trial court as they may arise.

3. The plaintiff criticises the statement in the original opinion that the arrangement between the two companies amounted to a "substantial merger," as implying that the contract between them was valid. It was not so intended. What was meant was that the relation between the companies was such that the Industrial company was liable for the indebtedness of the Orient company to the extent of any nonexempt assets it had received. The plaintiff argues that the contract was void and that the liability of the Industrial company is measured not only by the nonexempt assets it received at the time, but by the proportion of dues afterwards received from members of the Orient company which by the rules of that company would have been turned into its general fund. Whether or not the contract was in all respects valid, it was not controlled by the rule applied in *Bankers' Union v. Crawford*, 67 Kan. 449. 73 Pac. 79, which turned largely on the incapacity of one fraternal beneficiary association to obligate itself for the payment of certificates issued by another. The Industrial company was a business corporation and not a fraternal beneficiary association. Assuming that the contract was invalid, if members of the Orient company saw fit to accept membership in the Industrial company and continue payments to it, we do not think that any part of the payments so made would necessarily be held liable for existing debts of the Orient company, however the matter might be affected by any special equities.

The petition for a rehearing or for a modification of the decision is denied.