No. 32,713

JOHN MANK and FRED C. DAMMAN, *Appellees*, v. THE SOUTHERN KANSAS STAGE LINES COMPANY, *Appellant;* THE RAPID TRANSIT COMPANY, *Defendant.*

(56 P. 2d 71)

Opinion filed April 11, 1936.

*J. W. Blood, F. W. Prosser,* both of Wichita, *H. S. Roberts,* of Kansas City, and *J. T. Jennings,* of Kansas City, Mo., for the appellant.

*Louis R. Gates, Rush L. Fisette* and *James D. Howell,* all of Kansas City, for the appellees.

The opinion of the court was delivered by

HUTCHISON, J.: This was an action by the owners of a garage to recover from the defendant, The Southern Kansas Stage Lines Company, the balance of a second year's rent of the garage under the renewal statute, R. S. 67-502, on the strength of the claim that by the purchase of the business, rights and assets of the lessee as a motor carrier the defendant assumed the liabilities of the lessee carrier, including the liability of said renewed lease. The appeal is by the defendant from the orders of the trial court overruling its demurrer to the amended petition, overruling its motion to determine questions of law and overruling its motion for judgment on the pleadings.

The amended petition alleges the making of a written lease for the use of the garage for one year, with a monthly rent of $100, with a carrier not now a party to this action; that the lessee

occupied the garage three months more than the one year named in the written lease and then vacated it, leaving the rent for nine months of the renewal year unpaid, and three months later the motor carrier sold its business, rights and assets as a motor carrier to the defendant. The claim is for $900, less $150 rent collected from others during that period, plus $30 for repairs, making a total of $780.

The amended petition further alleges that the lessee motor carrier sold, transferred and assigned its business, right and assets as a motor carrier to the defendant stage line company and applied to the public service commission to transfer its certificate of convenience and necessity to the defendant stage line company, showing that the liability insurance policy of the motor carrier on file with the commission had already been assigned to the purchaser, and the public service commission made the transfer requested. The certificate of transfer contained the following clause: "the said purchaser to assume the duties, responsibilities and liabilities existing under and by virtue of said certificates." A copy of the lease, the application for transfer of certificate of convenience and necessity and the order of the commission making the transfer are attached to the amended petition as exhibits.

We will assume for the purposes of this case that the terms of the written lease were in line with the requirements of R. S. 67-502 and such as to authorize a renewal for another year under the allegations of the amended petition, so that the lessee motor carrier would have been liable thereunder for the rent of the balance of that renewal year. This attitude will be necessary in considering the demurrer to the petition, although some of these matters are put in issue by the answer on file.

In addition to the three assignments of error made by the defendant, as above mentioned, the defendant also insists that the trial court committed error in its order requiring it to produce certain records, documents, etc., on the motion of the plaintiff. Much has been said by the courts in the way of limiting the privilege, extent and purpose of such orders (*Railway Co. v. Burks,* 78 Kan. 515, 96 Pac. 950; 10 R. C. L. 1092; 22 C. J. 961; and 5 Jones Commentaries on Evidence [2 ed.] 3850), but regardless of the liberality in granting the order and the extent of the order, we think it is well settled that it is not an appealable order and not reviewable until after judgment. It was said in the Burke case concerning the error

"assigned upon the order requiring the defendant to permit an inspection and copy of the alleged reports," that—

"The order, however, is of a purely intermediate character. Its consequences cannot be observed until they are registered in the result of the trial on the merits, and hence it is not reviewable until after judgment." (p. 518.)

This ruling was referred to with approval in *Chippeaux v. Western Coal and Mining Co.*, 124 Kan. 475, 260 Pac. 625.

Was there error in overruling defendant's demurrer to the amended petition? Starting with a presumed liability of the lessee motor carrier, as stated above, the plaintiffs maintain that the defendant, in the purchase of the motor carrier's business and assets, became liable under the order of the public service commission in the transfer of the certificate of convenience and necessity to the defendant in which order the commission required the defendant purchaser "to assume the duties, responsibilities and liabilities existing under and by virtue of said certificate." If it is admitted for the purpose of this argument that the claim of the plaintiffs is a liability of the former motor carrier, the question remains as to whether it is one that exists under and by virtue of the certificate of convenience and necessity. Or in more specific terms, is a balance due for rent of a garage by the former motor carrier a liability existing under and by virtue of the certificate of convenience and necessity transferred to the purchaser? Both parties cite the case of *Shattuck v. Pickwick Stages Corp.*, 135 Kan. 602, 11 P. 2d 996, which was an action to recover damages sustained in an automobile collision with a motor carrier bus, where both the motor carrier at the time of the collision and its successor in business and transferee of the certificate were made parties defendant. It was there held that—

"Under the statute regulating motor carriers, a motor carrier which succeeds to the business, rights, assets and certificate of convenience and necessity of another motor carrier, succeeds to existing liabilities of the other to the extent of assets acquired." (Syl. ¶ 4.)

It will be observed that the liability there under consideration was for a tort committed by the original motor carrier in the line of its operations under its certificate of convenience and necessity. The case is not concerned with ordinary debts or liabilities of the original motor carrier. The collision occurred in August, 1928, when the stage line was owned and operated by the Pickwick Stages Corporation. In October, 1928, the business and assets were sold to the

Pickwick-Greyhound Lines and the certificate transferred to the purchaser. In the opinion, on page 607, the general conclusion is limited to the only matters there under consideration, namely, liability resulting from negligent conduct of the business, by the following sentence:

"Under the motor-carrier law the special privilege conferred by the certificate issued to Pickwick Stages was burdened with liability resulting from negligent conduct of the business."

It is further said in the opinion that—

"Pickwick-Greyhound Lines was not just an ordinary purchaser of property. It desired not merely the business and assets, but the particular special privilege which Pickwick Stages held. Pickwick-Greyhound Lines was bound to know the law. The law provided that it took the certificate as if the certificate had been issued to it originally. The order transferring the certificate specified that it assumed existing liabilities under the certificate. It took the benefit burdened with the corresponding obligation." (p. 607.)

We cannot avoid concluding that the holding in the Shattuck case was limited to liabilities existing under and by virtue of the certificate of convenience and necessity which would not ordinarily include delinquent rent on a garage.

But plaintiffs do not limit themselves in the allegations of their amended petition to the liabilities imposed by the order transferring the certificate of convenience and necessity, but elsewhere therein they allege that—

"The defendant, The Rapid Auto Transit Company, sold, transferred, and assigned its business rights and assets as a motor carrier to the Southern Kansas Stage Lines Company, a corporation . . ."

Under this allegation the plaintiffs maintain that they have been deprived of all assets to which they could look for satisfaction of their claim, and such a sale and purchase of assets is essentially a merger and should be attended with the same consequences as in a consolidation. A merger or consolidation is very different from a sale or purchase of assets, and the language of the allegation above quoted does not suggest nor intimate either merger or consolidation.

It is said in 7 R. C. L. 183:

". . . it may be stated as a general rule that in order to render the purchasing company personally liable for the debts of the selling corporation, it must appear that (a) there be an agreement to assume such debts; (b) the circumstances surrounding the transaction must warrant a finding that there was a consolidation of the two corporations; or (c) that the purchasing corporation was a mere continuation of the selling corporation; or (d) that the transaction was fraudulent in fact. . . ."

Plaintiffs in their brief admit the above quotation states the general rule regarding liability of purchasing corporations, but state that if the information had been produced as requested by the court this case would fall within the purview of the line of decisions showing merger or consolidation from a view of the whole transaction, which they claim would have been proper and illuminating, but that the defendant used every method at its command to prevent the circumstances and nature of the transaction from being disclosed and brought to view. This is good argument with reference to the proof, but not as to the allegations of the petition, which would be necessary to permit the introduction of such proof. There are no allegations in the amended petition that would make evidence as to merger or consolidation competent. Neither are there any allegations of agreement to assume the debt, nor want of consideration, nor that the transaction was fraudulent. The naked allegation of sale and purchase will not justify a reasonable inference of any of these fundamental matters.

Plaintiffs cite the forcible language from the decision in *Ball v. Oil & Gas Co.*, 113 Kan. 763, 216 Pac. 422, as follows:

"Even against a demurrer a petition is liberally construed and held sufficient if the facts stated, whether well pleaded or not, with all the reasonable inferences to be drawn therefrom, constitute a cause of action." (p. 766.)

It is not a question in the case at bar of these matters being well pleaded or not. The pleading is not ambiguous. The language is clear and concise. It bases the liability of the defendant upon the purchase of the business, rights and assets of the lessee, motor carrier, which is not enough to state a merger or consolidation, or even a reasonable inference thereof. (See, in this connection, *Altoona v. Richardson,* 81 Kan. 717, 106 Pac. 1025; *Condenser Co. v. Electric Co.,* 87 Kan. 843, 126 Pac. 1087; *Jackson v. Insurance Co.,* 101 Kan. 383, 167 Pac. 1046; and *Crozier v. Shoe Co.,* 103 Kan. 565, 175 Pac. 376.) We conclude that the demurrer to the amended petition should have been sustained.

There was no error in the overruling of defendant's motion to determine in advance of the trial the questions of law as authorized by R. S. 60-2902. That section provides that the court may in its discretion do so, and there is no suggestion that there was any abuse of discretion. Under such circumstances there was no reversible error in overruling this motion.

Defendant also assigns error in the overruling of its motion for judgment in its favor on the pleadings. If the demurrer to the pe-

tition should have been sustained, as we have just held, then since the reply is only a general denial of new matter set up in the answer, the rights of the plaintiffs are not strengthened or changed thereby, and there is no good reason why the judgment for the defendant should not follow the ruling that the petition is demurrable. It is so ordered.