No. 46,297

WILLIAM O. COMSTOCK, *Appellant,* v. GREAT LAKES DISTRIBUTING COMPANY, a Corporation, *Appellee,* and R. & C. DISTRIBUTORS, INC., a Corporation, VULCAN MANUFACTURING COMPANY, INC., a Corporation.

(496 P. 2d 1308)

Opinion filed May 6, 1972.

*William R. Stewart,* of Topeka, argued the cause and *John C. Humpage,* of Topeka, was with him on the brief for the appellant.

*James D. Waugh,* of Topeka, argued the cause, and *Edward L. Bailey,* of Topeka, was with him on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: This was an action to recover damages for personal injuries sustained by plaintiff-appellant in an accident caused by the collapse of an automobile jack manufactured by defendant

Vulcan Manufacturing Company, Inc. (hereafter referred to as Vulcan). The action was filed against Vulcan, R. & C. Distributors, Inc., a corporation, and the Great Lakes Distributing Company, a corporation, (hereafter referred to as Great Lakes).

Prior to trial, R. & C. Distributors, Inc., who purchased the jack from Vulcan and sold it to plaintiff was dismissed out of the case on a covenant not to sue.

Great Lakes was sued on the theory that it was liable for the debts of Vulcan because it was merely a continuation of the Vulcan Company, or in the alternative that actions of Great Lakes constituted a de facto merger with Vulcan.

The case was tried to a jury. At the conclusion of plaintiff's evidence, the trial court sustained a motion for a directed verdict in favor of Great Lakes against plaintiff. The court also directed a verdict in favor of plaintiff against Vulcan on the issue of liability. The trial proceeded on the issue of damages between plaintiff and Vulcan and terminated in a substantial verdict in favor of plaintiff. Vulcan made no appearance at the trial and was wholly in default. The Vulcan Company is not disorganized but apparently has little or no assets.

Plaintiff's motion for a new trial as to Great Lakes was overruled and he has appealed from the trial court's order directing a verdict in favor of Great Lakes—thus the sole issue presented is whether Great Lakes is liable for the debts of Vulcan.

Vulcan was incorporated in 1939, and for many years thereafter was engaged in the business of manufacturing automobile jacks. Although there were thirty-five stockholders, controlling interest was held by two—R. E. Lange and J. L. Ward. A third, Beryl White, was described as a principal stockholder; Ward and White died prior to 1963. In the late 1950's and early 1960's Vulcan encountered financial difficulties due to the lack of working capital, and as a result was forced to borrow considerable money. As security for loans, Vulcan mortgaged its real estate, machinery and equipment, and its "goods in process." In 1962 or early in 1963 Vulcan obtained a Small Business Administration loan in the amount of $100,000.00. At that time the total indebtedness of Vulcan amounted to about $120,000.00.

In 1963 Vulcan was doing a considerable volume of business, but was handicapped because of a lack of working capital. In the latter part of 1963, Joyce C. Verplank, a business man of Owatonna,

Minnesota, became interested in acquiring the controlling interest in Vulcan. Mr. Verplank became interested as a result of a suggestion by Judge Warren C. Plunkett, a business associate. Judge Plunkett was the principal owner of the Minnesota Trust Company of Austin, Minnesota. After negotiations which he initiated, Mr. Verplank acquired the stock of R. E. Lange, the Ward estate, and the Beryl White estate for the sum of $46,000.00. This amounted to controlling interest in the corporation. Verplank obtained a loan from Minnesota Trust Company in order to finance the purchase of the stock. Verplank took over the operation of the business early in 1964. He installed new officers and new directors with one exception—David Lange who had sold his stock to Verplank, was retained by Verplank as a salaried employee and served as secretary of the reorganized Vulcan Corporation. During this period, Verplank personally controlled and operated Vulcan.

Vulcan borrowed additional working capital, gave second mortgages on the Vulcan building and equipment, and assigned its accounts receivable. During the time that Verplank controlled Vulcan, the jack which caused the accident and injuries to plaintiff was manufactured.

Although Verplank was able to create a profit situation in Vulcan during his first year of control, the problem of lack of working capital continued. The financial condition deteriorated and finally, on June 8, 1965, Vulcan was unable to make its payroll and abandoned its employees, property and business.

Immediately thereafter, Vulcan's various mortgagees commenced foreclosure proceedings, pursuant to Minnesota law. The building was sold at a sheriff's auction sale to Polytex Corporation, a Minnesota corporation wholly unrelated to any of the corporations or individuals involved herein. Shortly thereafter, the holder of a second mortgage on the building redeemed from the Polytex Corporation. The new owner then leased portions of the building to four or five tenants, one of which was Great Lakes. The machinery and equipment were sold at a sheriff's sale—attended by 40 or 50 people—to two individual persons wholly unrelated to any corporation or individual involved. Thereafter, the holder of a second mortgage on the machinery and equipment redeemed it from the individual purchasers.

The new owner then made an intensive effort to sell the machinery and equipment and, after several bids, sold a portion of the equip-

ment to Great Lakes and the balance to other companies in the area. The inventory of finished goods and goods in process was purchased by a mortgagee bank. The corporate records of Vulcan were removed and stored in a safe by Warren Wallenberg, the treasurer of the company. The accounts had been previously assigned to a creditor of Vulcan.

Great Lakes was incorporated in February of 1965. Its incorporators were R. E. Lange, John Phenning and Frank Lapinski. Six other persons later became stockholders. At first, its business was the manufacture of sporting goods, in particular "gaff hooks" used in fishing. After Vulcan went out of business, Great Lakes leased from the First Heartland Investment Company, a portion of the building formerly owned by Vulcan. Great Lakes purchased some of the equipment formerly owned by Vulcan from Heartland and commenced to manufacture jacks similar to those previously manufactured by Vulcan, but of heavier and stronger materials. There was testimony that Great Lakes repaired some Vulcan jacks, which were returned by Vulcan customers. Also, Leslie Jennings testified that he went to work for Great Lakes in the summer of 1966 as a shipping clerk. Jennings testified that during the summer of 1966 (he was not certain as to the date) he received telephone orders from a Mr. Hernandez of Topeka, Kansas. In response to the orders from Hernandez, Jennings packaged and shipped three Great Lakes jacks to him—Jennings said that, at the request of Hernandez, he removed Vulcan tags from repaired Vulcan jacks and attached them to the Great Lakes jacks, and also altered the color of the paint so as to correspond with the color of Vulcan jacks. Jennings testified that this was the only occasion when he had altered jacks before shipping them and that he had no authority to do so.

As previously stated, the basis of plaintiff's action against Great Lakes is that it is merely a continuation of Vulcan, or in the alternative there was a de facto merger of Vulcan and Great Lakes. In order to support his claim, plaintiff attempts to compare the corporate composition of Vulcan prior to 1963 with the corporate makeup of Great Lakes, which did not exist until 1965. Plaintiff ignores the complete change in Vulcan's corporate composition during the period 1963-1965 due to the intervening acquisition by Verplank. At the time of the alleged continuation or merger, the parties who were stockholders, officers and directors of Vulcan prior to 1963 no longer had such status. The continuation or merger into

Great Lakes, claimed by plaintiff, must be considered with reference to Vulcan as it was composed under the Verplank operation when the jack in question was manufactured and when Vulcan ceased doing business, not as it was in 1963 when acquired by Verplank. In other words, June 8, 1965, when Vulcan ceased doing business, serves as the point of reference for the consideration of the issue of continuance or merger.

On appeal, both parties accept the general rule of nonliability of a transferee corporation for the prior debts of the transferor and the exceptions thereto, which are expressed in 15 Fletcher Cyc. Corp. [Perm. Ed.] § 7122, in these words:

"Generally where one corporation sells or otherwise transfers all of its assets to another corporation, the latter is not liable for the debts and liabilities of the transferor, except: (1) where the purchaser expressly or impliedly agrees to assume such debts; (2) where the transaction amounts to a consolidation or merger of the corporation; (3) where the purchasing corporation is merely a continuation of the selling corporation; and (4) where the transaction is entered into fraudulently in order to escape liability for such debts." (p. 187.)

The rule and exceptions were stated in almost identical language in 7 R. C. L. 183 (see 19 Am. Jur. 2d, Corporations, § 1546, pp. 922-924) which was accepted as the law in this jurisdiction in the case of *Mank v. Southern Kansas Stage Lines Co.*, 143 Kan. 642, 56 P. 2d 71 [1936].

Plaintiff admits the rule of nonliability, which we have quoted, is the law of this jurisdiction, but attempts to impose liability on Great Lakes on the theory of consolidation or merger under exception (2), or in the alternative on the theory that Great Lakes was merely a continuation of Vulcan under exception (3). The record does not support either theory.

We shall first direct our attention to the claim of consolidation or merger. The terms are defined and distinguished in 15 Fletcher, *supra*, § 7041 as follows:

"Strictly speaking a consolidation signifies such a union as necessarily results in the creation of a new corporation and the termination of the constituent ones, whereas a merger signifies the absorption of one corporation by another, which retains its name and corporate identity with the added capital, franchises and powers of a merged corporation." (p. 6.)

In the instant case there is no evidence of direct dealing between Vulcan and Great Lakes. Vulcan never sold, transferred or delivered anything to Great Lakes. Some of the equipment and machinery formerly owned by Vulcan is now owned by Great Lakes. The testi-

mony of Judge Plunkett, which is undisputed, was that the machinery and equipment was sold at a sheriff's auction to a Dale Thule and L. L. Hurst, Jr., after competitive bidding by several bidders. Thule was described as the owner of an automotive equipment business and Hurst as owner of the Edwards Manufacturing Company. Thereafter, the First Heartland Investment Company, to protect its investment, bid in the machinery and equipment within the statutory time. Later part of the machinery and equipment was sold to Great Lakes and the remainder to Lake Center Switch Company of Winona, Minnesota.

The Vulcan building, as previously noted, was bid in at the foreclosure sale for $60,000.00 by the Polytex Corporation. First Heartland Investment Company, holder of a third mortgage, exercised its right of redemption within a year, under Minnesota law, by redeeming the building for $67,000.00. At the time of the trial First Heartland Investment Company had the building leased to four or five tenants, one of whom was Great Lakes.

There is no evidence that any assets, tangible or intangible, passed directly from Vulcan to Great Lakes. Nor is there any evidence that any of the original purchasers of Vulcan's property at foreclosure sales acted as "strawmen" to accomplish a transfer of ownership from Vulcan to Great Lakes.

The portion of the machinery and equipment formerly owned by Vulcan, which eventually came into the hands of Great Lakes, passed through first and second purchasers following a foreclosure sale before acquisition by Great Lakes. On this point we find the applicable rule in 15 Fletcher, *supra*, § 7333:

"When a corporation purchases the franchises and property of another corporation at a sale under a decree foreclosing a mortgage thereon, or other judicial sale, or where natural persons purchase at such sale and afterwards transfer to a corporation, the new corporation is not liable for the debts of the old company, provided they are not prior liens on the property, and provided their payment has not been assumed, nor their payment imposed by the foreclosure decree or by statute. So where an individual purchases the assets of a corporation at a foreclosure sale and then resells to a new company composed largely of the members of the company whose assets were sold, and there is no fraud, the new company is not liable for the debts of the old. . . ." (pp. 642-644.)

By the undisputed evidence, Great Lakes acquired the machinery and equipment as a bona fide purchaser; it does not own any interest in the building formerly owned by Vulcan, but only occupies a part of it as a tenant. Other assets of Vulcan were purchased or

acquired by other parties. The acquisition of some Vulcan property by Great Lakes, under the circumstances described, does not tend to show a consolidation, merger or mere continuation as those terms have been defined.

Is there any evidence tending to show that Great Lakes was merely a continuation or reincarnation of Vulcan? None of the incorporators of Great Lakes were stockholders or officers of Vulcan at the time Great Lakes was chartered in February of 1965. Vulcan was a going business under the control of, and operated by, Verplank at that time and continued as a corporate entity. There was testimony that the directors or stockholders of Vulcan held a meeting as late as October 1965. Great Lakes did not come into being as a result of a reincorporation of Vulcan or by amendment of the Vulcan corporate charter. (See 15 Fletcher, *supra*, § 7329, pp. 633-635; and Am. Jur. 2d, Corporations, § 1550, pp. 926-927.)

Plaintiff does not plead fraud; nevertheless, we have examined the record in this regard since he mentions fraud in his brief. The incorporation of Great Lakes in 1965, and the subsequent bona fide acquisition of some Vulcan property after foreclosure and sale, cannot serve as a premise for a claim of fraud.

Plaintiff relies heavily on the case of *Ledbetter v. Oil Co.*, 96 Kan. 636, 152 Pac. 763, wherein this court held that a petition alleging an injury caused by Sunflower State Oil Company stated a cause of action against Cudahy Refining Company as an absorbing corporation of Sunflower. The petition referred to was summarized in the opinion in these words:

". . . [T]hat since the injury and damage to the plaintiff an agreement was entered into between the defendants by which the Sunflower company sold and transferred to the Cudahy company all its capital stock, assets, contracts, and franchises; that since such transfer the Sunflower company has ceased business and has no office in Kansas or elsewhere, and no property, and that plaintiff can not obtain service upon it in any manner. It alleged further, that 'by reason of the agreement and transfer' the Sunflower company was consolidated and merged into the Cudahy company; that the latter is the successor of the former, and that by reason of the foregoing facts the Cudahy company has become liable for plaintiff's claim. In substance, the petition alleged: consolidation, succession, and receipt by the Cudahy company of all the assets of the old company. . . ." (pp. 637-638.)

The evidence in the instant case does not establish any of the allegations of the petition considered in *Ledbetter*. There is no evidence in the instant case of any direct dealings between the two

corporations—no transfer of capital stock, assets, contracts or franchises and no evidence of any agreement or understanding between the two corporations.

Plaintiff cites *Crozier v. Shoe Co.,* 103 Kan. 565, 175 Pac. 376, wherein Crozier sued Menzies Shoe Company, a Michigan corporation and garnisheed moneys in the hands of a Geary County, Kansas, firm. The Menzies Shoe Company of Wisconsin claimed the money and was permitted to intervene. The trial court upheld plaintiff's claim that the Wisconsin company was liable for the debts of its predecessor, the Michigan company, finding that the principal stockholders of the old Michigan company merely organized the new Wisconsin company to take over the old Michigan company. This court affirmed, stating in the opinion:

". . . The capital and assets of the old company were a trust fund for the payment of its debts. The Wisconsin company holds and enjoys all, or nearly all, the assets of the old company; it did not procure them as a wholly independent purchaser at a fair sale, nor otherwise freed of the pertinent liabilities attaching thereto. . . ." (p. 567.)

The case of *Berry v. K. C. Ft. S. & M. Rld. Co.,* 52 Kan. 774, 36 Pac. 724, dealt with a statutory consolidation of two railroad companies. The cases of *Altoona v. Richardson,* 81 Kan. 717, 106 Pac. 1025; and *Jackson v. Insurance Co.,* 101 Kan. 383, 167 Pac. 1046, involved contractual assignments of assets which were held to impose liability upon absorbing corporations under the trust fund doctrine.

The cases referred to illustrate situations where liability may be imposed upon a transferee corporation by reason of absorption, consolidation, transfer of assets without consideration, or contractual agreement but none of the cases mentioned lend support to plaintiff's position here.

Viewing the evidence in the light most favorable to plaintiff, we find nothing in this record that would make applicable any of the exceptions to the general rule of nonliability, nor is there evidence which might serve as a basis for the drawing of any rational inference to that effect by the trier of facts. It follows that the trial court correctly sustained Great Lakes' motion for a directed verdict and its judgment is affirmed.