(676 P.2d 1290)
No. 55,068

Daniel K. Stratton, *Appellant*, v. Garvey International, Inc., Combustion Engineering, Inc., John T. Borton, *Defendants*, Borton, Inc., *Appellee*.

Opinion filed February 2, 1984.

*Broc E. Whitehead,* of Williamson & Stalcup, Chartered, of Wichita, for appellant.

*Eric B. Metz,* of Martin, Pringle, Oliver, Triplett & Wallace, of Wichita, for appellee Borton, Inc.

Before REES, P.J., MEYER, J., and RICHARD W. WAHL, District Judge Assigned.

WAHL, J.: This is an appeal by Daniel K. Stratton, plaintiff, from the entry of summary judgment in favor of Borton, Inc., defendant, in a product liability case. Judgment was entered pursuant to K.S.A. 60-254(*b*), and only Stratton and Borton, Inc. are parties to this appeal. Hereafter, Stratton may be called plaintiff and Borton, Inc. may be called defendant.

Plaintiff is a grain inspector for the State of Kansas. On February 16, 1981, he was injured while riding a man-lift device located in a grain elevator in Wichita, Kansas, and owned by Garvey International, Inc. Plaintiff alleged that he lost his balance while riding the man-lift and that his leg was crushed between the lift platform and the ceiling of the floor through which the lift was passing.

The man-lift device was constructed by the predecessor of Combustion Engineering, Inc. It was installed in the elevator in 1953 by a partnership named Chalmers and Borton Contractors and Engineers, which also had constructed the grain elevator. This partnership was formed in 1926 and consisted of Clinton H. Chalmers and John T. Borton.

On August 20, 1960, Chalmers died and the partnership was dissolved through proceedings had in the Probate Court of Reno County, Kansas, entitled *In the Matter of the Partnership Estate of C. H. Chalmers, Deceased, in Partnership with John T. Borton, Under the Firm Name of Chalmers and Borton,* Case No. 3583. A decree of final settlement was entered on August 29, 1963, according to law.

On September 6, 1960, John T. Borton, the surviving partner,

completed the formation of Borton, Inc., the defendant. At the time of the incorporation, Borton owned 79.4% of the stock of Borton, Inc., and was its president.

Borton, Inc. assumed no debts or liabilities of the partnership. All assets and liabilities of the Chalmers and Borton Partnership were administered through the partnership estate in the Reno County Probate Court. At the time of the death of Chalmers, there were some nineteen contracts to be completed by the partnership. These contracts were completed by Borton as the surviving partner in cooperation with the partnership estate. All records and books of account for these contracts were kept separately from the records of Borton, Inc.

Borton, Inc. rented the business office from the partnership estate for a fair and normal rental. Until 1963, that office was also used to conclude the partnership business. Borton, Inc. employed substantially all of the partnership employees, but during the partnership administration two separate payrolls were maintained. At the final settlement of the partnership estate, all partnership assets were distributed in equal shares to John T. Borton and to the estate of Clinton H. Chalmers, deceased.

Ultimately, Borton, Inc. purchased the office building, office equipment, construction equipment, blueprints and designs of the partnership. All assets acquired by Borton, Inc. from the partnership were for full and adequate consideration paid to the partnership estate.

Other than such notices as were necessary through the probate administration of the partnership assets and liabilities, Chalmers and Borton Partnership gave no formal notice to former customers of its dissolution, nor did Borton, Inc. give any notice to the partnership customers that it was engaged in the business of constructing grain elevators. Borton, Inc. at no time nor in any manner held itself out to be a successor to the Chalmers and Borton Partnership business.

Like the partnership, Borton, Inc. did not construct man-lift devices. It constructed grain elevators and installed man-lift devices into them. Neither the partnership nor Borton, Inc. entered into any continuing service or maintenance contracts concerning grain elevators constructed. Borton, Inc. did perform some repair work on elevators constructed by the partnership, including the Garvey International, Inc. elevator in Wichita

where the plaintiff's injury occurred. Borton, Inc. did perform some repair work on man-lift devices which had been installed by the partnership, but did not perform any repair or maintenance service on the man-lift upon which the plaintiff was injured. Plaintiff alleges that on two occasions, Borton, Inc. installed "gates" or "safety gates" on man-lift devices which had been installed by the partnership. The record reveals that Borton, Inc. did install some "safety gates" on a man-lift in the elevator at Cimarron, Kansas. No other such installation appears in the record.

Borton resigned his positions as an officer and director of Borton, Inc. on September 2, 1975. On December 2, 1975, he entered into a contract with Borton, Inc. to sell all of his stock to the corporation for $2,665,491.70. Final payment under this contract is to be made on September 30, 1984.

Plaintiff initially filed this action solely against Garvey International, Inc., as the owner of the elevator. By his first amended petition, he named Borton, Inc. as a defendant. A second amended petition set forth a claim against John T. Borton. Plaintiff's claims as alleged against Borton, Inc. were based upon theories of strict liability in tort, negligence and breach of an implied warranty of merchantability and an implied warranty of fitness for a particular purpose. In the trial court, as on appeal, plaintiff placed principal reliance on breach of a duty to warn. Borton, Inc. moved for summary judgment which was granted by the trial court and a final judgment was entered under K.S.A. 60-254(b).

Plaintiff has appealed, claiming three separate issues in which he alleges the trial court erred. These shall be considered separately and in the order presented in plaintiff's brief.

I. Did the district court err in granting summary judgment to Borton, Inc. on the issue of duty to warn?

Plaintiff asserted that the defendant breached a duty to warn him of a dangerous and hazardous condition in the man-lift device. The trial court rejected this claim and held that, even when construing the facts of this case in the light most favorable to the plaintiff, there were no facts to support this theory. Plaintiff claims that there were factual issues in dispute making the entry of summary judgment on this issue erroneous.

The rules governing summary judgment are well established

in this state. Summary judgment is authorized if the pleadings, depositions, answers to interrogatories and affidavits, if any, show that no genuine issue of material fact remains in dispute, and a party is entitled to judgment as a matter of law. *McAlister v. Atlantic Richfield Co.*, 233 Kan. 252, 662 P.2d 1203 (1983); *Nordstrom v. Miller*, 227 Kan. 59, 605 P.2d 545 (1980); *Every v. Jefferson Ins. Co. of N.Y.*, 4 Kan. App. 2d 715, 610 P.2d 645 (1980).

The Kansas Supreme Court has recognized that a cause of action may arise in either negligence or strict liability for failure to warn of a dangerous condition in a product. *Mays v. Ciba-Geigy Corp.*, 233 Kan. 38, 661 P.2d 348 (1983); *Jones v. Hittle Service, Inc.*, 219 Kan. 627, 549 P.2d 1383 (1976). It does not appear, however, that the Kansas appellate courts have addressed the question of the existence, or the extent, of a successor entity's duty to warn of defects in its predecessor's products.

In *Gee v. Tenneco, Inc.*, 615 F.2d 857, 866 (9th Cir. 1980), the Court stated the general rule to be:

"It is clear that a successor corporation may acquire an independent duty to warn where defects in a predecessor's products come to its attention. See *Leannais v. Cincinnati, Inc.*, 565 F.2d 437 (7th Cir. 1977); *Shane v. Hobam, Inc.*, 332 F. Supp. 526 (E. D. Pa. 1971); *Wilson v. Fare Well Corp.*, 140 N. J. Super. 476, 356 A.2d 458 (1976). It is equally clear, however, that succession alone does not impose a duty to warn of recently-discovered defects. See *Travis v. Harris Corp.*, 565 F.2d 443 (7th Cir. 1977); *Chadwick v. Air Reduction Company*, 239 F. Supp. 247 (N. D. Ohio 1965).

"A common thread running through decisions imposing a duty to warn upon a successor corporation has been the continuation of the relationship between the successor and the customers of the predecessor."

Thus, there appears to be a two-pronged burden which the plaintiff must meet to establish the duty of the successor entity to warn: (1) knowledge of the defective condition of the product, and (2) a relationship between the successor entity and the customers of the predecessor entity.

The continued relationship between the successor entity and the customers of the predecessor entity must be more than casual and must have a consequential basis connected with the predecessor entity, and there must be an economic benefit to the successor before a duty to warn may be imposed upon the successor. In *Travis v. Harris Corp.*, 565 F.2d 443, 449 (7th Cir. 1977), the Court said:

"Succession to a predecessor's service contracts, coverage of the particular machine under a service contract, service of that machine by the purchaser corporation, a purchaser corporation's knowledge of defects and of the location or owner of that machine, are factors which may be considered in determining the presence of a nexus or relationship effective to create a duty to warn."

In *Shane v. Hobam, Incorporated,* 332 F. Supp. 526 (E. D. Pa. 1971), in considering the relationship between the predecessor and successor entities, the Court discussed whether the successor assumed the ongoing operation of the predecessor and whether the successor maintained any relationship with the predecessor's customers by servicing units sold by the predecessor.

This issue is addressed in *Jacobs v. Lakewood Aircraft Service, Inc.,* 512 F. Supp. 176 (E. D. Pa. 1981), where the claim was based on a defective wing tip fuel system in a Beechcraft Bonanza airplane. The court found the successor corporation owed no duty to warn since the successor did not continue the predecessor's service contracts, had apparently never serviced a wing tip fuel tank manufactured by the predecessor, and did not seek out the customers of the predecessor to sell spare parts.

This question was before the Michigan Court of Appeals in *Pelc v. Bendix Machine Tool Corp.,* 111 Mich. App. 343, 358, 314 N.W.2d 614 (1981), and the Court commented on the duty of the successor corporation to warn as follows:

"In the instant case, defendant admits that through its machine history records it had constructive knowledge of the existence of the broach machine on which Gary Pelc was injured. However, there is nothing in the record to indicate that defendant had serviced the machine in question or had any control over it. There is also no indication that defendant or any employee of defendant, including Uber, was aware of any defect in this machine prior to Gary Pelc's injury. Because plaintiff has failed to establish that defendant serviced the machine in question or that defendant had knowledge of a defect in the machine prior to Pelc's injury, summary judgment with regard to this count was proper."

The only evidence presented in the instant case that the defendant had any knowledge of the defective condition of the man-lift device is the fact that the defendant serviced man-lift devices installed by Chalmers and Borton, and that, in 1974, the defendant installed safety gates on a man-lift device in a grain elevator in Cimarron, Kansas. From this, plaintiff argues that defendant had knowledge that the installed man-lift devices could not be operated safely without safety gates. Yet, there is

nothing to show why the gates were installed in the Cimarron elevator, or that the man-lift in question was defective, or that the man-lift in Cimarron was the same as the man-lift in Wichita, or that the defendant ever did any repair or maintenance on the Garvey man-lift, or that other injuries occurred on lifts without gates, or even that the plaintiff was injured because of the absence of a safety gate on the man-lift in question. As the Supreme Court observed in *Mays v. Ciba-Geigy Corp.*, 233 Kan. at 54, "(w)hile a plaintiff is not normally required to prove his case at the summary judgment stage, he must present some facts to support the elements of his claim."

Did Borton, Inc. have a consequential relationship with the customers of Chalmers and Borton Partnership? Frequently cited factors in determining whether such a relationship exists include: (1) succession to the predecessor's service contracts; (2) coverage of the particular machine under the contract; (3) service of that machine by the successor corporation; and (4) the successor's knowledge of defects and of the location or owner of that machine. *Tucker v. Paxson Machine Co.*, 645 F.2d 620 (8th Cir. 1981); *Gee v. Tenneco, Inc.*, 615 F.2d 857; *Travis v. Harris Corp.*, 565 F.2d 443.

A comparison of two Seventh Circuit cases in which opposite results were reached may be helpful. In *Leannais v. Cincinnati, Inc.*, 565 F.2d 437 (7th Cir. 1977), the plaintiff was injured while working on a machine manufactured by Forte Equipment Company, which sold its assets for cash to defendant Cincinnati, Inc. prior to the time of the injury. In reversing the district court's entry of summary judgment in favor of Cincinnati, the court stressed the fact that Cincinnati assumed all of Forte's service obligations, thus demonstrating actual or potential economic benefit to Cincinnati attributable to the customers of Forte. The court remanded the case for consideration of whether the particular machine was under a service contract and whether Cincinnati had worked on that machine.

The same panel of judges affirmed summary judgment in favor of the successor corporation in *Travis v. Harris Corp.*, 565 F.2d 443. The plaintiff was injured in 1973 while working on a die press machine manufactured in 1957 by the Sheridan Company and sold in 1957 to Inland Container Corporation. Inland in turn sold the machine to plaintiff's employer in 1972. In 1964, the

manufacturer, Sheridan, sold its assets to a corporation which, following a merger, became the defendant, Harris Corp. The sole basis for the plaintiff's claim against Harris was a one-time visit by one of its subsidiary's employees to the factory of the company which originally purchased the machine, but there was no showing that the employee worked on the machine. There was no assumption by Harris of the service contracts of its predecessor and there was no showing that Harris knew of any defects in the machine. The court held that such facts created no duty to warn on the part of Harris.

Borton, Inc. did not assume any service contracts from the partnership. The absence of continued service agreement was a major factor in finding no duty to warn existed in *Jacobs v. Lakewood Aircraft Service, Inc.*, 512 F. Supp. 176, and the presence of such a contract was held to render summary judgment inappropriate in *Shane v. Hobam, Inc.*, 332 F. Supp. 526.

Plaintiff argues that defendant continued a business relationship with partnership customers and derived economic benefit therefrom. Plaintiff points out that Borton, Inc. carried on the same business activity as did the partnership and performed repairs on partnership construction, including man-lift devices. The defendant did not, however, work on the man-lift at Garvey International, Inc. in Wichita. Defendant did not seek repair work from partnership customers but it is not unusual that those customers sought the services of Borton, Inc. for their necessary repairs since Chalmers and Borton no longer existed. Granted the contacts of Borton, Inc. with former partnership customers probably were of some economic advantage to Borton, Inc., but there is no showing that these casual contacts brought, or should have brought, any defects in Chalmers and Borton construction to the attention of Borton, Inc. Defendant did not seek these former customers of the partnership to do their repair and maintenance work. Defendant's relationship with these partnership customers was much too tenuous and casual upon which to establish liability for a failure to warn. There must be some basis in such a relationship of benefit to the successor entity and solid connection with the predecessor entity. Were it not so, a duty to warn would arise in any circumstance in which a successor has any dealings with its predecessor's customers. *Jacobs v. Lakewood Aircraft Service, Inc.*, 512 F. Supp. 176.

The district court correctly granted summary judgment to the defendant on this issue. We now examine plaintiff's second complaint.

II. In a product liability lawsuit where plaintiff's cause of action is brought against the successor corporation, should the court determine the successor's liability under the traditional rule governing successor liability or adopt the "product line" theory of successor liability?

Plaintiff's claim against defendant Borton, Inc. rests on the assumption that defendant is the successor corporation to the partnership of Chalmers and Borton Contractors and Engineers. The district court granted summary judgment to defendant finding that it was not liable to plaintiff.

In *Comstock v. Great Lakes Distributing Co.*, 209 Kan. 306, 310, 496 P.2d 1308 (1972), the Supreme Court stated the general rule concerning the nonliability of a successor corporation for the debts and liabilities of its predecessor in the following language:

" 'Generally where one corporation sells or otherwise transfers all of its assets to another corporation, the latter is not liable for the debts and liabilities of the transferor, except: (1) where the purchaser expressly or impliedly agrees to assume such debts; (2) where the transaction amounts to a consolidation or merger of the corporation; (3) where the purchasing corporation is merely a continuation of the selling corporation; or (4) where the transaction is entered into fraudulently in order to escape liability for such debts.' [15 Fletcher Cyc. Corp. (Perm. Ed.) § 7122] (p. 187.)"

See also *Kansas Comm'n on Civil Rights v. Service Envelope Co.*, 233 Kan. 20, 660 P.2d 549 (1983).

Plaintiff acknowledges that *Comstock* is the law of Kansas, but argues that the state should adopt the more recently developed theory derived from product liability law and conveniently referred to as the "product line" theory. The product line theory was first enunciated in *Ray v. Alad Corp.*, 19 Cal. 3d 22, 34, 136 Cal. Rptr. 574, 560 P.2d 3 (1977), and the California Supreme Court stated the rule as follows:

"[A] party which acquires a manufacturing business and continues the output of its line of products under the circumstances here presented assumes strict tort liability for defects in units of the same product line previously manufactured and distributed by the entity from which the business was acquired."

The plaintiff in *Ray* was injured by a ladder which was manufactured by Alad I. Subsequent to the manufacture of the ladder

in question, Alad I sold its manufacturing plant, machinery, offices, office fixtures and equipment, inventories and finished goods to Lighting, the predecessor of Alad II, and the manufacture of "Alad" ladders continued without interruption. Alad I was dissolved within two months after the sale of its assets to Lighting. The California Court in *Ray* noted three reasons for imposing strict tort liability against Alad II:

"(1) the virtual destruction of the plaintiff's remedies against the original manufacturer caused by the successor's acquisition of the business, (2) the successor's ability to assume the original manufacturer's risk-spreading rule, and (3) the fairness of requiring the successor to assume a responsibility for defective products that was a burden necessarily attached to the original manufacturer's good will being enjoyed by the successor in the continued operation of the business." 19 Cal. 3d at 31.

The holding in *Ray* was extended in *Rawlings v. D. M. Oliver, Inc.*, 97 Cal. App. 3d 890, 159 Cal. Rptr. 119 (1979), wherein the California Court of Appeals held strict liability could be imposed upon a successor corporation even though it did not continue to manufacture the identical line of products of its predecessor.

Apparently only two other states have followed the California court in adopting the product line theory. *Ramirez v. Amsted Industries, Inc.*, 86 N. J. 332, 431 A.2d 811 (1981), and *Dawejko v. Jorgensen Steel Co.*, 290 Pa. Super. 15, 434 A.2d 106 (1981). In both cases, the predecessor entity had dissolved, thus fulfilling the first factor of *Ray*, the destruction of the injured party's remedy against the original manufacturer.

Several courts have considered and rejected the product line theory for a variety of reasons. In *Bernard v. Kee Mfg. Co., Inc.*, 409 So. 2d 1047, 1049 (Fla. 1982), the Florida Supreme Court rejected the theory because of the "threat of economic annihilation that small businesses would face." In *Jones v. Johnson Machine & Press Co.*, 211 Neb. 724, 320 N.W.2d 481 (1982), it was noted that the successor cannot be held to have created the risk of, nor obtained the benefit from, its predecessor's products. Another commonly cited reason for not adopting the product line theory judicially is that the adoption of such a theory is a question for legislative consideration. *Leannais v. Cincinnati, Inc.*, 565 F.2d 437; *Hernandez v. Johnson Press Corp.*, 70 Ill. App. 3d 664, 388 N.E.2d 778 (1979); *Jones v. Johnson Machine & Press Co.*, 211 Neb. 724.

The product line theory is inapplicable in the instant case in

any event because plaintiff's remedy against the original installer of the man-lift, John T. Borton, the surviving partner of Chalmers and Borton, has not been destroyed. He is a defendant in this action. Under K.S.A. 56-315, "[a]ll partners are liable jointly and severally for everything chargeable to the partnership . . . ." Thus, if the partnership is found to have been responsible for plaintiff's injury due to improper installation of the man-lift, plaintiff has a remedy. Plaintiff, however, argues that he should not be denied his action against Borton, Inc. "because there has been no determination at the District Court of the liability of the partner, nor his financial solvency, should he ultimately be found liable to the Plaintiff." Financial ability to satisfy a judgment has never been the basis for any finding of liability, product line included. If John T. Borton is ultimately held to be accountable for any damages to the plaintiff and not be financially solvent to pay the award, then plaintiff would simply find himself in the same position as other injured parties who, after judgment, find that the defendant is judgment proof. The argument offered by plaintiff is without merit.

Plaintiff observes that the Kansas Supreme Court reaffirmed the traditional rule of corporate nonliability in *Comstock v. Great Lakes Distributing Co.*, 209 Kan. 306, and handed down the decision on strict liability in *Brooks v. Dietz*, 218 Kan. 698, 545 P.2d 1104 (1976), before the California Court decided *Ray v. Alad Corp.*, 19 Cal. 3d 22. From this, plaintiff argues that "Kansas Courts should no longer apply the traditional corporate approach to determine liability in a products liability lawsuit." We have no way of knowing whether the Kansas Supreme Court would adopt the product line theory in a ruling today, but we note that the Court followed *Comstock* as recently as *Kansas Comm'n on Civil Rights v. Service Envelope Co.*, 233 Kan. 20, and "this court is duty-bound to follow the law as established by the Supreme Court of our state in the absence of some indication that it is departing from its previously expressed position." *State v. Miller*, 6 Kan. App. 2d 432, 434, 629 P.2d 748 (1981).

It does not appear that, under the facts of the instant case, the product line theory would aid plaintiff's recovery against defendant. We need make no decision on that issue, however, because Kansas adheres to the traditional majority rule of suc-

cessor nonliability which the trial court correctly applied in granting summary judgment for defendant.

Support for this position may also be found in the enactments of the Kansas legislature. In 1981, the legislature enacted the Kansas Product Liability Act, K.S.A. 1982 Supp. 60-3301 *et seq.* This act addresses a broad spectrum of product liability issues and effected substantial changes in the then existing Kansas law. This enactment was made after California decided *Ray.* The product line concept of liability must have been known to the legislature, but it was not incorporated in the product liability act. We may now address plaintiff's final argument.

III. Did the district court err in holding that the continuation exception to the traditional rule of nonliability of successor corporations did not apply?

Plaintiff argues that, even if the court applies the traditional corporate law rule of *Comstock v. Great Lakes Distributing Co.,* 209 Kan. 306, Borton, Inc. is nevertheless subject to liability under the continuation exception. Is Borton, Inc. merely a continuation of the partnership of Chalmers and Borton?

The Kansas court considered the continuation exception in *Comstock* and rejected it because there was no commonality of incorporators, officers or stockholders, and the predecessor corporation continued in business after the incorporation of the successor.

The common identity of officers and shareholders in both predecessor and successor entities is a commonly cited criterion in determining the existence of continuity. *Leannais v. Cincinnati, Inc.,* 565 F.2d 437; *Cashar v. Redford,* 28 Wash. App. 394, 624 P.2d 194 (1981). In the instant case, John T. Borton was an original partner and was the incorporator, majority stockholder and president of Borton, Inc.

In *Cyr v. B. Offen & Co., Inc.,* 501 F.2d 1145 (1st Cir. 1974), the court considered that the same employees continued to produce the same products in the same factory. In the case at bar, the same employees continued the same business of constructing grain elevators from the same office.

Although the exception has been phrased "where the purchasing *corporation* is merely a continuation of the selling *corporation* " (*Comstock,* 209 Kan. at 310; emphasis added), other courts have held that the continuation exception is not inapplicable simply because one of the entities was not a corporation.

*Cyr v. B. Offen Co., Inc.,* 501 F.2d 1145; *Jones v. Eppler,* 266 P.2d 451 (Okla. 1953). In *Tift v. Forage King Industries, Inc.,* 108 Wis. 2d 72, 79, 322 N.W.2d 14 (1982), the court ruled:

"A court merely need determine that the defendant, despite business transformations, is substantially the same as the original manufacturer."

The elements of the continuation exception were listed in *Jackson v. Diamond T. Trucking Co.,* 100 N. J. Super. 186, 196, 241 A.2d 471 (1968), to be:

"(1) transfer of corporate assets (2) for less than adequate consideration (3) to another corporation which continued the business operation of the transferor (4) when both corporations had at least one common officer or director who was in fact instrumental in the transfer . . . and (5) the transfer rendered the transferor incapable of paying its creditors' claims because it was dissolved in either fact or law."

The issue then distills itself into an examination of the facts in the instant case to apply the rules cited. The following facts of this case are considered to be very important:

1. Following the death of Clinton H. Chalmers, the partnership estate was in probate administration for three years during which time nineteen contracts were completed by John T. Borton under the supervision of the probate court.

2. During the entire period of administration of the partnership estate, the partnership accounts were kept entirely separate from Borton, Inc. accounts and were fully reported to the partnership estate.

3. Borton, Inc. did rent office space in the partnership facilities, but a fair rental value was paid into the partnership estate.

4. Borton, Inc. did purchase many assets of the partnership, but a full fair market value of the assets was always paid to the estate.

5. At the close of the probate administration, the assets remaining were divided equally between John T. Borton and the estate of Clinton H. Chalmers, deceased.

6. Borton, Inc. did not assume any debts or liabilities of Chalmers and Borton Partnership.

7. With the complete dissolution of the partnership through probate administration, there could be no merger of Chalmers and Borton into Borton, Inc.

8. There is no indication or suggestion that the transfer of

assets to Borton, Inc. was done fraudulently to the detriment of creditors.

There is no logical rationale by which this court could find Borton, Inc. to be a continuation of the partnership of Chalmers and Borton. The two entities basically coexisted for three years of the probate administration. When the partnership estate was closed on August 29, 1963, the partnership legally died just as surely as Clinton Chalmers physically died on August 20, 1960. All business relationships and obligations between Chalmers and Borton and its customers were finally concluded and no notifications were in order. Borton, Inc. simply embarked on an established business venture when circumstances left a void in that business upon the death of Chalmers and the required dissolution of the partnership. Borton, Inc. neither claimed any connection with Chalmers and Borton nor solicited business from the former customers of the partnership. It is difficult to conceive any practice or procedure that would more completely demonstrate the separateness of similar entities than were employed by Borton, Inc. in this case. So total was this separateness that the fact that John T. Borton was a partner, incorporator and shareholder and the fact that the employees continued the same business from the same office do not weigh nearly heavily enough to invoke the continuation exception.

The district court did not err in ruling summarily that the continuation exception to the traditional rule of nonliability of a successor corporation did not apply.

The judgment of the district court is affirmed.