Brown v. Milliken.

JAMES BROWN *et al.* v. W. J. MILLIKEN, *as County Clerk of Labette County, et al.*

1. RAILROAD, *Township Bonds to Aid; Irregularities in Funding; Estoppel.* Where a township has duly issued bonds in aid of the construction of a railroad, and afterward a compromise with the holders of such bonds is effected, and in exchange therefor funding bonds are issued, and the original bonds are taken up and canceled, and afterward such township levies and collects taxes in payment of said funded indebtedness, and more than one-third of said funding bonds are thus paid, and where it is shown that such bonds are in the hands of innocent and *bona fide* holders, *held,* that thereafter such township is estopped from alleging any irregularities in the proceedings leading up to and the issuing of such funding bonds, and such estoppel is equally effective against the individual tax-payers of the township.

2. ACT, *Void — City, Liable on Bonds — Not Aided by Statute of Limitations.* The act of the legislature authorizing the city of Chetopa to incorporate as a city of the second class, (being chapter 59, Laws of 1871,) is unconstitutional and void, being in contravention of § 1,

49 — 42 KAS.

article 12, of the constitution, which provides that the legislature shall pass no special act conferring corporate powers. (*Corporate Powers of Council Grove*, 20 Kas. 619.) And *further held*, if said city had been legally incorporated as a city of the second class, it would still be liable for its proportionate share of such funding bonds, although such funding bonds were issued after the city was made a city of the second class. And *further held*, That plaintiffs, tax-payers of said city of Chetopa, are in no condition to claim protection by reason of the statute of limitations from the payment of said tax.

### *Error from Labette District Court.*

ACTION brought by the plaintiffs in error, tax-payers of the city of Chetopa, to enjoin a tax levied in the year 1888 to pay the interest and an installment of the principal of certain funding bonds issued by Richland township in the years 1879–80, to compromise and cancel $50,000 in bonds issued by the township in July, 1870, in payment of a subscription to the capital stock of the Missouri, Kansas & Texas Railway Company. The record shows that at the time the bonds were voted to the Missouri, Kansas & Texas Railway Company, Richland township embraced the city of Chetopa, then a city of the third class. In 1871 an act was passed by the legislature, being chapter 59, Laws of 1871, making said city a city of the second class, and since that time the city has been acting as such a city. After the voting of the $50,000 bonds by Richland township, no interest was paid upon them, and afterward suits were brought in the United States circuit court and judgments duly obtained against the township, declaring said bonds legal and valid. In 1878 a compromise was made between the township and the bond-holders by which the bonds were to be taken up and canceled by the issue of funding bonds at the rate of sixty cents on the dollar for the original indebtedness. At that time the bonds and interest amounted to about $80,000, and in order to issue the funding bonds a proposition was submitted to the electors, calling for an election on the 1st day of August, 1878, and notice of the election was published in a newspaper in the township, the first insertion being on July 15th. Afterward an election was held which resulted in a majority of votes in

favor of the issuing of said funding bonds called for in the proposition voted on, being the sum of $33,000. Afterward funding bonds were issued in the amount of $49,000. In the proceedings and the election the city of Chetopa, then claiming to be a city of the second class, took no part or interest. Afterward taxes were duly levied upon the property of the township, not including the city of Chetopa, from the year 1879 up to the year 1888, and more than one-third of this bonded indebtedness was paid. In the year 1888 a tax was spread upon the tax-rolls of the township, and including as well the property of the city of Chetopa, to pay an installment of principal and interest upon the remaining funding bonds. This action was brought by tax-payers of the city of Chetopa to enjoin the collection of that tax. Trial by the court, at the May term, 1889, and judgment for the defendants. The plaintiffs bring the case to this court.

*Case & Glasse,* for plaintiffs in error.

*Kimball & Osgood,* for defendants in error.

Opinion by CLOGSTON, C.: The plaintiffs in error now contend that the tax-payers of Chetopa are not liable for this tax, for the reasons, first, that the city of Chetopa is no part of the township of Richland. Second, that the funding bonds were illegally issued — first, because in excess of the amount authorized by law; second, in excess of the amount stated in the notice and proclamation of election; third, because the notice of election gave only fifteen days' notice, whereas the statute requires that thirty days' notice of such election be given the electors. Third, that the funding bonds created a new obligation upon Richland township, which was created after the city of Chetopa became a city of the second class and had ceased to be a part of the township. Fourth, and lastly, they claim that they are protected by the statute of limitations. Plaintiffs in error base their claim that the city of Chetopa is a city of the second class, and no longer a part of the township of Richland, upon chapter 59 of the Laws of 1871, which by title is an act

authorizing certain cities therein named to incorporate as cities of the second class. This statute was an act to incorporate the city of Chetopa and the city of Garnett, in Anderson county, cities of the second class; and plaintiffs in error contend that under the authority of *Corporate Powers of Council Grove*, 20 Kas. 619, they are at least a *de facto* city of the second class, and that, being a *de facto* city, the defendants cannot question its organization. In other words, that the state, having attempted to incorporate the city as a city of the second class, alone can question the regularity of that proceeding. While on the other hand it is claimed that this act is in violation of §1, article 12 of the constitution. This statute is in direct violation of the constitution, and conferred no powers upon the city by which it could become a city of the second class. It is true, as stated in *Corporate Powers of Council Grove*, supra, that the city was a *de facto* city of the second class, and as such might not defend against its own acts done while purporting to act as a city of the second class; but this case presents a different question. Here, the city is claiming protection by reason of its organization under an act which violates the constitution. The city is claiming protection from the payment of a debt which was created when it was a part of the township of Richland, and is seeking immunity from taxation by reason of this unconstitutional act of the legislature. This we think the city cannot do. And as far as this act of the legislature is concerned, the city of Chetopa must be held to be still a part of Richland township, and a city of the third class.

The next proposition — that the city of Chetopa is not liable, because these funding bonds must be collected of the township only, as the city is no longer a part of the township — falls with the first proposition. It was a part of the township, and therefore a part of Richland township, at the time of the voting and issuing of the bonds last named. However, if not a part of the township at the time of the issuing of the funding bonds, that, under the authority of *Comm'rs of Marion Co. v. Comm'rs of Harvey Co.*, 26 Kas. 181, would not

protect the city against the tax. In that case, bonds were issued while the territory songht to be taxed was a part of Marion county; afterward a township was detached, and added to Harvey county, and at the time the funding bonds were issued this township was so detached. Mr. Justice BREWER in that case said:

"There were, therefore, at the time of the division, certain bonds outstanding, which were a lien upon the detached territory, and the indebtedness evidenced by which bonds has never in fact been paid. The funding amounts to this, and nothing more: in lieu of one certain evidence of debt, another is issued. In consideration, it is true, of a change in the time and interest, a change was made in the amount promised to be paid. But this change was a reduction, and therefore a benefit to the debtor. Still, neither the one paper nor the other was the debt itself, but only the written evidence thereof. The debt remains the same. The change was in the evidence of that debt."

The plaintiffs still insist that even if this be true, the city is not liable for this debt, for the reason that these funding bonds were illegally and irregularly issued; that a greater amount was issued than was authorized to be issued; that the notice of election gave fifteen days' notice, when under the law there ought to have been given thirty days' notice. It is true that these defects did exist, and if properly raised and at the proper time would defeat and destroy the bonds issued thereunder.

One fact is not disclosed by this record, and it is an important fact to be considered in connection with these irregularities: Who owned the bonds at the time this suit was brought? If in the hands of the original purchasers, one question is presented; but if in the hands of innocent purchasers, a very different question. The plaintiffs are seeking to relieve themselves of a liability. They admit their original liability under the original indebtedness, and now if they can escape this tax it must be upon the ground of irregularity in the issue of these new bonds. As above said, the question whether or not these bonds can now be declared void must be largely deter-

mined by the question as to who owned the bonds. Before this court would be warranted in restraining and enjoining a tax, it must be shown that the tax is absolutely void; not void under a possible condition of facts, but void under the facts as they actually exist. The plaintiffs have given us no information in their petition, and the court does not aid us in its findings, and does not show whether these bonds were held by innocent purchasers, or not; and in the absence of that showing we must hold against the plaintiffs, and that they are held by innocent purchasers.

But to go back to the question: Defendants in error claim, admitting the irregularities, that this could not avail the plaintiffs, for the reason that after the issue of these bonds, Richland township levied taxes and paid for some nine years the interest and principal, and at the time this action was brought more than one-third of the funded debt had been paid; and they say that that township would be estopped from setting up these irregularities if suit was brought upon the bonds, because at the time the bonds were issued the bond-holders gave up to that township a valid indebtedness against it of $80,000, and took in lieu thereof these funding bonds for $49,000; that after this had been done the township could not keep the original bonds and then say that the funding bonds were void on account of these irregularities on the part of the municipal corporation or its officers. Against this argument plaintiffs urge that they are now called upon for the first time to pay taxes for this debt, and up to this time have never had any cause of complaint and no ground upon which they could have founded an action to enjoin the payment of the bonds; and this claim, so far as the facts go, is true. Can this avail them? Why did they not take part in the proceedings leading up to the issuing of the funding bonds? And why is it that no tax has been levied upon their property? It is by reason of their claim that they were outside of and no part of the township. It is perhaps true that the people of the township thought that the city was outside of the township, and for that reason the tax was not carried out upon the property

of the city. This was a mistake of facts. Can this mistake on the part of the township serve as a protection to the city from this tax? In the first place, the city is in a better condition than it was before the original indebtedness of $80,000 had been cut down and merged into this new indebtedness, now less than $30,000. In equity can plaintiffs be allowed to say that by reason of these things they should not pay? We think not. The findings of the court show that these bonds were voted by a majority vote of Richland township; they also show that the city took no part in the election, but there is no showing but that the votes cast at that election were a majority of all the votes even if the city had voted. The strong probability is, however, that the city had the larger number of voters, but no presumption can be indulged in to assist the plaintiffs in this action, and therefore we can fairly presume that the finding of the court was supported by the facts; that the votes cast at that election were a majority of the votes in the township, including the vote of the city. We see no reason why the rule of estoppel should not be applied as against the township, and if good against the township then as to every inhabitant and tax-payer of the township; and for the purpose of this action the plaintiffs are estopped, as well as every other tax-payer, and the fact that they have escaped taxation heretofore is no ground why the doctrine should not be applied to them as well as against the township. The township paid taxes many years; the township received and canceled the bonds of the original indebtedness; and while standing in this relation, with the presumption that the bonds are in the hands of innocent holders for value, we think that the township, as well as the plaintiffs, is estopped from alleging and setting up the irregularities complained of by plaintiffs. (*Comm'rs of Morris Co. v. Hinchman*, 31 Kas. 729; *Brown v. City of Atchison*, 39 id. 37; *County of Tipton v. Locomotive Works*, 103 U. S. 523; *Marcy v. Township of Oswego*, 92 id. 637; *Ward v. Johnson*, 95 Ill. 215; *Thatcher v. The People*, 98 id. 632; *Meyer v. Brown*, 65 Cal. 583; *Whitney Arms Co. v. Barlow*, 63 N. Y. 65; *In-*

*surance Co. v. Bruce,* 105 U. S. 328; *Block v. Commissioners,* 99 id. 686.)

The last claim made by plaintiffs is, that the statute of limitations has run in favor of the plaintiffs. The action of the township or township authorities determines this question. By an oversight, or by mutual mistake, the city has been left out, and has paid no part of this indebtedness during the nine years since the issuing of the funding bonds. Does this omission protect it from the payment of the balance of this indebtedness? The township is liable still for the debt. There is no bar that the township could plead, and no limitation that it could claim, to protect it against suits, and we think that these individual tax-payers of the city of Chetopa are in no condition to claim protection from such a bar.

It is therefore recommended that the judgment of the court below be affirmed.

By the Court: It is so ordered.

All the Justices concurring.