No. 47,974

In the Matter of GARY FLANIGAN, *Appellant,* v. LEAVENWORTH RECREATION COMMISSION, *Appellee.*

(549 P. 2d 1007)

Opinion filed May 8, 1976.

*Roger W. Lovett,* of the Kansas commission on civil rights, argued the cause, and *Curt T. Schneider,* attorney general, was with him on the brief for the appellant.

*Robert D. Beall,* City Attorney of Leavenworth, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

FOTH, C.: This proceeding was initiated as a complaint by Gary Flanigan to the Kansas commission on civil rights (KCCR), claiming that he had been discharged from his employment by the Leavenworth Recreation Commission in violation of the Kansas act against discrimination. In due course the KCCR entered an award of damages in his favor including, we surmise, back pay. Counsel for the Recreation Commission filed a motion for rehearing and, when that was overruled, a notice of appeal to the district court. There summary judgment was entered setting aside KCCR's order on the grounds that the Leavenworth Recreation Commission had ceased to exist and there was no person or agency responsible for its outstanding obligations. The KCCR has appealed.

The following chronology of events is gleaned from the record and briefs, except that those events prefaced by [?] do not appear in either source and a question exists as to whether or not they ever occurred:

*1948.* Leavenworth Recreation Commission approved by electors and created under K. S. A. 12-1901 *et seq.* as a joint enterprise of the city of Leavenworth and its school district.

*August, 1971.* Flanigan complaint filed with KCCR.

*June 26, 1973.* Public hearing on complaint.

*November 10, 1973.* Hearing examiner's recommended findings of fact, conclusions of law and order forwarded to KCCR.

[?] City and school district agree under K. S. A. 12-1912 to terminate their joint recreation commission. City establishes its own recreation system operating by its own recreation commission.

[?] City publishes for two consecutive weeks notice of intent under K. S. A. 12-1914 to combine its recreation system with its park department, and waits twenty days for a protest petition.

*November 27, 1973.* City governing body adopts Ordinance No. 6158, combining the city's recreation system and its park system into a single park and recreation department.

*November 30, 1973.* Ordinance No. 6158 published.

*December 1, 1973.* KCCR files its order, adopting examiner's report with amendments.

*December 14, 1973.* (Amended) application for rehearing filed in the name of the "Leavenworth Recreation Commission," and subsequently denied by KCCR.

*January 15, 1974.* Notice of appeal to district court filed in name of "Leavenworth Recreation Commission."

*February 9, 1974.* KCCR files motion to set case for trial and to limit issues.

*June 20, 1974.* Motion to dismiss filed by counsel of record for the recreation commission on the grounds that the "Leavenworth Recreation Commission" no longer exists. Attached was a copy of Ordinance No. 6158.

*November 13, 1974.* Trial court inquires of counsel by letter whether motions are ripe for decision.

*November 27, 1974.* Counsel for KCCR responds, pointing out that Ordinance No. 6158 doesn't prove that the "Leavenworth Recreation Commission" doesn't exist, suggesting that its existence would be a proper issue to determine at trial, and requesting the court to rule on the motions.

*April 23, 1975.* Trial court files memorandum opinion treating the motion to dismiss as one for summary judgment and sustaining it.

In its opinion the trial court found that the city and school district were authorized by K. S. A. 12-1912 to dissolve the recreation commission, and had done so. The latter finding was apparently based solely on Ordinance No. 6158, combining the city's park and recreation systems. The court thus went on:

"This Court concludes that the Leavenworth Recreation Commission ceased to exist on November 30, 1973; that there is no statutory authority for the City of Leavenworth to assume any of the liabilities or responsibilities of the previously existing Leavenworth Recreation Commission; that future levies are restricted by statute for recreation purposes only; that the present action has been abated; that respondent is entitled to judgment as a matter of law setting aside the order of the Kansas Commission on Civil Rights dated December 1, 1973. . . ."

On appeal the KCCR designates nine separate points of error, but they may be restated into the following three propositions:

1. There was no competent evidence on which the trial court could base its finding that the "Leavenworth Recreation Commission" had been abolished according to law.

2. If the recreation commission had been abolished on November 30, 1973, as found by the trial court, then there was no body having the legal capacity to file in its name the motion for rehearing of December 14, 1973, the notice of appeal of January 15, 1974, or the motion to dismiss of June 20, 1974. If there was no one to appeal to the district court, the argument goes, that court should have

dismissed the appeal rather than grant the relief it did to a non-existent party.

3. Again assuming the recreation commission was in fact abolished, the trial court was wrong in finding that the city did not succeed to its outstanding liabilities as well as its assets.

Since we agree at least in part with all three propositions we find it necessary to reverse the judgment and remand the case for further proceedings.

First, it seems apparent that whether or not the Leavenworth Recreation Commission had been abolished was a disputed issue, and was the controlling fact. Counsel for the KCCR was unwilling to concede the fact, so it was necessary to have some sort of proof. The statute (K. S. A. 12-1912) under which the city and school district purported to act says that "[a]ny city . . . may enter into an agreement with the school district in which it is located to terminate the recreation commission thereof. . . ." The statute clearly requires an agreement. No evidence of such an agreement appears in the record except such as appears in Ordinance No. 6158. In pertinent part it provides:

"WHEREAS, the Leavenworth Recreation Commission was established under authority of Article 19, Chapter 12, of the Kansas Statutes Annotated, which provided for the operation of the recreation system under joint control of the Board of Education and the Governing Body of the City of Leavenworth, Kansas; and

"WHEREAS, K. S. A. 12-1912 through K. S. A. 12-1917 provides for the City and School District to terminate the Recreation Commission; and

"WHEREAS, the Board of Education, Unified School District No. 453, and the City of Leavenworth, Kansas, after study and consultation, agree it would be in the best interest of the recreation program and the public generally, to terminate the Recreation Commission as it now exists and to make recreation a function exclusively of said city using said school facilities as may be available, and;

"WHEREAS, the city desires to retain the services of the members of the present Recreation Commission in an advisory capacity to be known as the Park and Recreation Advisory Board.

"NOW, THEREFORE, BE IT ORDAINED BY THE GOVERNING BODY OF THE CITY OF LEAVENWORTH, KANSAS:

"Section 1. That the park system and the city public recreation system be combined to form a park and recreation department.

"Section 2. All property under the control and jurisdiction of either such system shall, upon the effective date of this ordinance, be transferred to the Park and Recreation Department which shall, thereafter, administer the City's Park and Recreation System.

"Section 3. The members of the Recreation Commission at the time of the effective date of this ordinance, shall constitute the Park and Recreation Advisory Board."

While the ordinance recites the existence of an agreement in its preamble, the ordinance obviously is a unilateral document and is not itself an agreement. It was adopted under an act (Laws 1965, ch. 121, §§ 1-5, now K. S. A. 12-1913 through 12-1917) dealing with cities which have their own recreation systems. That act has nothing to do with the abolition of a joint city-school district recreation commission like the Leavenworth Recreation Commission. Abolition is covered by § 12-1912 (originally Laws 1965, ch. 110, § 3).

Thus, for the ordinance to operate in the fashion contemplated by the statutes would require: an agreement between the city and school district dissolving the Leavenworth Recreation Commission; an assumption of its operations by a city recreation system under a city recreation commission; published notice for two weeks of the city's intention to adopt the ordinance; and a twenty day waiting period before its adoption on November 27, 1973. It may well be that all this happened, but it is not shown by anything in the record. On remand, if abolition is still an issue, the trial court should at least receive competent evidence showing the existence of an agreement between the city and school district before finding that the Leavenworth Recreation Commission was abolished.

Second, the actions of counsel for the recreation commission in carrying on this litigation after the alleged demise of his client is wholly inconsistent with an argument that there is no successor. A motion to abate before the KCCR would have been sufficient. Instead counsel filed a motion for rehearing with eleven of its twelve grounds going to substance; only in number 11 was the termination of the recreation commission suggested. As counsel points out in his brief here, "[s]ince no other party was substituted in the action, and it would be inconsistent to argue nonexistence of the said entity, . . . this presents a dilemma for the Recreation Commission or its successor, if any, in risking liability." This situation is, we believe, covered by K. S. A. 1975 Supp. 60-225 (e):

"An attorney representing a party who dies or becomes an incapacitated person, or a public officer who dies or is separated from his office, in any action, may, in order to protect rights and avoid time limitations, continue such representation in the name of the original party until there has been a substitution therefor."

Since, as we shall develop shortly, we believe there is a successor to the Leavenworth Recreation Commission, counsel was justified under this statute in taking steps to preserve the successor's rights.

Finally, and most importantly, we cannot agree with the trial

court that the simple act of dissolving a public agency has the effect of voiding all its outstanding obligations. Such a result would, we think, raise serious constitutional issues.

Back wages are said to be involved, and Flanigan's underlying employment contract is protected by the prohibition against the impairment of contracts found in Article I, § 10 of the United States Constitution. The foundation case, *Broughton v. Pensacola*, 93 U. S. 266, 23 L. Ed. 896, involved a municipal reorganization. The city of Pensacola had issued bonds but later refused to meet the obligations, pleading an intervening reorganization which had formed a new and distinct corporation. The Court found the new corporation was a continuation of the old:

". . . It is sufficient that here, in our judgment, there was a continuation of the Corporation of Pensacola, with its original rights of property and obligations, not a new and distinct creation of corporate capacity and liability.

". . . The inhibition of the Constitution, which preserves against the interference of a State the sacredness of contracts, applies to the liabilities of municipal corporations created by its permission; and although the repeal or modification of the charter of a corporation of that kind is not within the inhibition, yet it will not be admitted, where its legislation is susceptible of another construction, that the State has in this way sanctioned an evasion of, or escape from, liabilities, the creation of which it authorized. When, therefore, a new form is given to an old municipal corporation, or such a corporation is reorganized under a new charter, taking in its new organization the place of the old one, embracing substantially the same corporators and the same territory, it will be presumed that the Legislature intended a continued existence of the same corporation, although different powers are possessed under the new charter, and different officers administer its affairs; and, in the absence of express provision for their payment otherwise, it will also be presumed, in such case, that the Legislature intended that the liabilities as well as the rights of property of the corporation in its old form should accompany the corporation in its reorganization." (pp. 269-70.)

That principle was affirmed in *Mount Pleasant v. Beckwith*, 100 U. S. 514, 25 L. Ed. 699; and in *Mobile v. Watson*, 116 U. S. 289, 29 L. Ed. 620, 6 S. Ct. 398.

The *Mount Pleasant* case involved railroad aid bonds issued by a town which had been dissolved and its territory annexed to two others. The Court held:

". . . In such a case, if no legislative arrangements are made, the effect of the annulment and annexation will be that the two enlarged corporations will be entitled to all the public property and immunities of the one that ceases to exist, and that they will become liable for all the legal debts contracted by her prior to the time when the annexation is carried into operation." (100 U. S. at 528.)

Speaking generally of the dissolution of a municipal corporation the Court went on to say:

". . . Its property passes into the hands of its successor, and when the benefits are taken the burdens are assumed, the rule being that the successor who takes the benefits must take the same *cum onere,* and that the successor town is thereby estopped to deny that she is liable to respond for the attendant burdens. [Citations omitted.]" (*Id.* at 528-9.)

We have employed similar language:

"Where one corporation goes entirely out of existence by being annexed to or merged in another, if no arrangements are made respecting the property and liabilities of the corporation that ceases to exist, the subsisting corporation will be entitled to all the property and answerable for all the liabilities." (*Vandriss v. Hill,* 58 Kan. 611, 613, 50 Pac. 872.)

Cf. also, *Brown v. Milliken,* 42 Kan. 769, 23 Pac. 167; *School District v. The State,* 29 Kan. 57. And see, K. S. A. 10-119, providing that "whenever any municipality has been disorganized according to law" its territory shall nevertheless "be liable for the payment of all . . . indebtedness incurred by such municipality before such . . . disorganization." The rule is aptly summed up in 2 McQuillin, Municipal Corporations (3d ed.), § 8.15:

". . . By virtue of the clauses in the federal and state constitutions forbidding the impairment of the obligations of contracts, either directly or indirectly, by legislative act or otherwise, all contracts by virtue of the force of organic law, survive the dissolution, and creditors may enforce their claims in any mode permitted by law. It has been said that neither a private nor a public corporation can avoid payment of its legal obligations by permitting its charter to expire or to be forfeited." (pp. 577-8.)

The Leavenworth Recreation Commission, operating under K. S. A. 12-1901 *et seq.*, was an independent political subdivision. Each year it was required by § 12-1908 to certify its budget for the ensuing calendar year to either the city or school district, whichever was larger. In this case we are told budgets went to the city, which was in turn required by the statute to levy sufficient taxes to finance the recreation commission's budget. The city had no discretion as to the amount of the levy and no choice but to make it, so long as it was within the one or two mill statutory limit. The money collected by the city was turned over to the recreation commission, with no strings attached, except that the city treasurer acted as ex officio treasurer of the commission. Except for the fact that another municipality levied its taxes for it, the recreation commission was a municipality just like any other. At the time the recreation commission was allegedly abolished it was in the middle

of its 1973 budget year. Presumably it had on hand cash balances as well as physical assets, all of which were apparently taken over by the city. Further, in August, 1973, the city had certified its budget and tax levies for 1974, presumably including a levy for the recreation commission's 1974 budget. This levy became a lien on all taxable property in the city on November 1, 1973, and was collected by the city as agent for the recreation commission in December, 1973, and June, 1974. These funds also belonged to the recreation commission, and likewise were apparently taken over by the city.

The justification for this fiscal maneuver is found, if anywhere, in K. S. A. 12-1912. That section, after authorizing abolition by agreement of the city and school district as noted above, goes on to say "and any such city shall thereupon be authorized to make an annual tax levy upon all taxable tangible property of the city for recreation purposes. Such agreement may include provisions for use of school property for recreation purposes and may establish a recreation department of the city government." The statute, as we read it, contemplates that the city may carry on the same functions as the terminated recreation commission, utilizing its equipment, facilities and funds. The city of Leavenworth certainly so construed it when it enacted Ordinance No. 6158.

Despite any procedural deficiencies the ordinance clearly evinces the city's intent: in section 2 to take over the recreation commission's assets and continue its functions; and in section 3 to continue the commission's governing body albeit in an advisory capacity. The game was the same, the players were the same, only the uniforms had changed. The city was the *de facto* successor, and we think the *de jure* successor to the recreation commission. We think, under the authorities cited, that if the city took over the assets and functions of the defunct recreation commission, it took over its liabilities as well.

As a result we hold that for the purposes of this proceeding the city of Leavenworth is the legal successor of the Leavenworth Recreation Commission if the latter agency has been abolished.

On remand, then, the trial court should first ascertain whether the Leavenworth Recreation Commission has been abolished. If it has not, the proceeding can be continued in its name (and if necessary its assets can be traced to the transferee city). Assuming it has been abolished, at least *de facto,* the court should entertain favorably a motion to substitute the city under K. S. A. 1975 Supp.

60-225 (*d*). In either event the trial court will then be in a position to consider the appeal on the merits, under the guidelines established in *Stephens v. Unified School District*, 218 Kan. 220, 546 P. 2d 197.

The judgment is reversed and the case is remanded for further proceedings in accordance with this opinion.

APPROVED BY THE COURT.