No. 54,150

KANSAS COMMISSION ON CIVIL RIGHTS, *Appellant,* v. SERVICE ENVE-
LOPE COMPANY, INC.; METRO ENVELOPE MIDWEST, INC., ITS SUC-
CESSOR; NATIONAL ENVELOPE CORPORATION-MIDWEST, ITS SUC-
CESSOR; GEORGE R. CLIPNER, INDIVIDUALLY AND AS AGENT,
OFFICER, DIRECTOR AND SHAREHOLDER OF SERVICE ENVELOPE
COMPANY, INC., *Appellees.*

(660 P.2d 549)

Opinion filed March 26, 1983.

*Arthur W. Solis,* of Topeka, was on the brief for Kansas Commission on Civil Rights.

*Dean A. Hodapp,* of Blumer & Nally, of Kansas City, Missouri, and *Homer C. Bittiker,* of Bittiker & McAdam, of Overland Park, were on the brief for appellee George R. Clipner.

*James E. Kelley, Jr.,* of Smith, Gill, Fisher & Butts, Incorporated, of Kansas City, Missouri, and *Ray L. Borth,* of Cooke, Ballweg, Borth, Wilson & Simpson, of Prairie Village, were on the brief for appellee National Envelope Corp.-Midwest.

The opinion of the court was delivered by

HOLMES, J.: This is an appeal from an order of the district court denying enforcement of an award by the Kansas Commission on Civil Rights (KCCR) entered in favor of claimant Evelyn Lee (now Howell) under the Kansas act against discrimination, K.S.A. 44-1001 *et seq.*

On October 27, 1976, Evelyn Lee Howell filed an employment discrimination complaint with the KCCR against "Service Envelope Company and their representatives." Mrs. Howell was a former employee of Service Envelope Company, Inc. (Service), and asserted certain acts of discrimination based upon her sex against her former employer. At the time the alleged acts of employment discrimination took place and at the time the complaint was filed, the outstanding corporate stock of Service was owned fifty percent by George R. Clipner and fifty percent by Per Windju. In December of 1976, Windju sold his interest in Service to Clipner, who was then the sole remaining stockholder. On May 22, 1978, a prehearing conference was held with the KCCR. Mr. Clipner, although not an attorney, appeared on behalf of Service as its president. At the request of the claimant her claim was amended to name Service Envelope Company, Inc., as the sole respondent and the words "and their representatives" were specifically deleted from the complaint. On June 6, 1978, the public hearing was held and over a year later, on July 20, 1979, the KCCR examiner filed his decision which was approved by the KCCR on October 25, 1979, just two days short of three full years since the filing of the original complaint. The claimant was awarded $9,810.00 in back wages and $500.00 for pain, suffering and humiliation. No appeal was taken from the KCCR order and award. K.S.A. 44-1011.

During the three years that the matter was pending before the

KCCR, numerous changes took place at Service. In January of 1979, Clipner sold his stock in Service to one Michael Herman. Herman organized Metro Envelope Midwest, Inc. (Metro), and the real property where the business of Service was conducted was sold to Clipner. The other assets of Service were sold or transferred to Metro. Sometime in the latter part of 1979, the assets of Metro were sold to three individuals of Bedford, New York, and on February 1, 1980, they sold all or a part of such assets to National Envelope Corp.-Midwest, (National), for $1,500,000.00. There is no contention that any of the transfers were other than arms-length bona fide transactions.

In May of 1980, the KCCR filed suit in district court on behalf of the claimant to collect the employment discrimination award. K.S.A. 44-1011. Named as defendants were Service, Metro, National and George R. Clipner. The case was heard in district court on November 10, 1981. By that time Service and Metro had both gone out of business and their corporate charters had been forfeited by the Kansas Secretary of State pursuant to K.S.A. 17-7510. It was the position of the KCCR in the trial court, and is its position in this court, that Clipner should be held liable for the award against Service as he had been the president, sole stockholder and chief operating officer of Service and had committed the tortious acts of employment discrimination against Mrs. Howell. The KCCR also took the position that National should be held responsible for the payment of the award under the federal doctrine of *remedial successorship liability* even though National did not come into existence until nearly four years after the discriminatory acts of Service occurred. The trial court held for both Clipner and National, finding no liability on the part of either. The KCCR has appealed.

At the outset we reiterate that Service, the only party to the proceedings before the KCCR, did not appeal the award to Mrs. Howell and therefore the merits of her claim before the KCCR is not an issue. The sole issues before this court pertain to whether parties who were not named in the original action before the KCCR can subsequently be held liable for an award granted by the KCCR pursuant to K.S.A. 44-1001 *et seq.*

K.S.A. 44-1011 provides for the filing of a separate action in district court to collect an award that has become final. It provides in pertinent part:

"The commission, attorney general or county attorney, at the request of the commission, may secure enforcement of any final order of the commission by the district court of the county where the unlawful employment practice or unlawful discriminatory practice shall have occurred or where any person required in the order to cease and desist from an unlawful employment practice or unlawful discriminatory practice or to take any affirmative action resides or transacts business, through mandamus or injunction in appropriate cases, or by action to compel the specific performance of the order. Such proceedings shall be initiated by the filing of a petition in such court, together with a transcript of the record upon the hearing before the commission, and issuance and service of a copy of said petition as in civil actions. The court shall have power to grant such temporary relief or restraining order as it deems just and proper, and to make and enter upon the pleadings, testimony and proceedings an order or decree, enforcing, modifying, and enforcing, as so modified, or setting aside in whole or in part, the order of the commission."

Thus it appears clear the power of the district court in a collection proceeding is limited to enforcing or modifying and enforcing or setting aside in whole or in part the prior order of the KCCR. No provision is made for the joining of parties who were not parties to the original order or for the enforcement of the order against such parties.

Nevertheless, appellant urges this court to adopt what is known in the federal system as "remedial successorship liability." The theory is that the strong public policy against any type of discrimination based on race, religion, color, sex, physical handicap, national origin or ancestry mandates relief for the discriminatee even though such relief may be at the expense of a totally innocent party who had no part in the original acts of discrimination. The doctrine has been applied in federal labor relations and Title VII discrimination violations when the original employer is no longer available to respond in damages and the original business has been replaced by another entity conducting the same or a similar enterprise.

The doctrine of remedial successorship liability espoused by the KCCR was first applied in the context of labor law and has been recognized by the United States Supreme Court in *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 38 L.Ed.2d 388, 94 S.Ct. 414 (1973). In that case, the successor corporation, All American Beverages, Inc., had purchased Golden State's business after the National Labor Relations Board (NLRB) had found an unfair labor practice and had ordered Golden State to reinstate an employee with back pay. All American was not a party to

the adjudication as to the unfair labor practice, but did participate in a subsequent back pay specification proceeding before the NLRB. The NLRB found that although All American was a bona fide purchaser, it had acquired the bottling and distribution business *with knowledge* of the outstanding board order and that it continued to carry on the business without interruption or substantial change in methods or personnel. The NLRB therefore held All American liable jointly and severally with Golden State as its successor.

In affirming the enforcement order of the Court of Appeals for the Ninth Circuit, the Supreme Court noted the important policies behind the federal labor law and approved the Board's discretion in balancing the conflicting interests of the bona fide purchaser and the offended employee. The court indicated three important considerations to be made in protecting the rights of the successor. First, it recognized that no liability will be imposed against the bona fide purchaser without affording it a full and fair opportunity to be heard on the issue of its successorship; second, the successor must have acquired substantial assets of its predecessor and continued, without interruption or substantial change, the same business operation as the predecessor; and third, the successor corporation must have had some warning sufficient to protect itself from exposure to such potential liability.

"Since the successor must have notice before liability can be imposed, 'his potential liability for remedying the unfair labor practices is a matter which can be reflected in the price he pays for the business, or he may secure an indemnity clause in the sales contract which will indemnify him for liability arising from the seller's unfair labor practices.' [Citation omitted.]" 414 U.S. at 185.

That same doctrine of remedial successorship liability was then adopted in a federal Title VII discrimination case. In *Equal Emp. Op. Com'n v. MacMillan Bloedel Containers, Inc.,* 503 F.2d 1086 (6th Cir. 1974), the Court of Appeals held that Title VII mandates the application of the successor doctrine. The court did, however, emphasize that application of the doctrine is not automatic. It must be determined on a case-by-case basis. It reversed the district court's *sua sponte* grant of summary judgment to the successor but also held that the successor was entitled to a more definite statement of the cause against it.

In expressing its reason for holding the doctrine applicable in discrimination cases, the court said:

"Failure to hold a successor employer liable for the discriminatory practices of its predecessor could emasculate the relief provisions of Title VII by leaving the discriminatee without a remedy or with an incomplete remedy. In the case where the predecessor company no longer had any assets, monetary relief would be precluded. Such a result could encourage evasion in the guise of corporate transfers of ownership. Similarly, where relief involved seniority, reinstatement or hiring, only a successor could provide it." 503 F.2d at 1091-92.

In the instant case, there was no showing that National had any knowledge of the existing award in favor of Mrs. Howell. The KCCR candidly admits that National was not a party to the discriminatory actions of Service and that it was a bona fide purchaser for value of the assets it received. National, on the other hand, concedes that it is operating essentially the same business that was formerly operated by Service, with some of the same equipment at the same location, and employs several of the former employees of Service.

The general rule as to the liability of a successor corporation for the debts of its predecessor was stated in *Comstock v. Great Lakes Distributing Co.*, 209 Kan. 306, 496 P.2d 1308 (1972). In a personal injury action, Great Lakes was sued on the theory that it was merely a continuation of the alleged tortfeasor, Vulcan Manufacturing Company, Inc. Vulcan was never disorganized, but apparently had little or no assets. In affirming a directed verdict and denial of new trial in defendant's favor, the court said:

"Generally where one corporation sells or otherwise transfers all of its assets to another corporation, the latter is not liable for the debts and liabilities of the transferor, except: (1) where the purchaser expressly or impliedly agrees to assume such debts; (2) where the transaction amounts to a consolidation or merger of the corporation; (3) where the purchasing corporation is merely a continuation of the selling corporation; or (4) where the transaction is entered into fraudulently in order to escape liability for such debts." Syl. ¶ 1.

In the instant case, the trial court did not review the possibility of liability under any of the exceptions and a careful review of the record would indicate that none of them apply to the facts of this case. The court simply held that the doctrine of remedial successor liability as adopted by some federal courts does not apply. We also note that the general corporation code specifically covers successor liability in the case of a merger or consolidation. K.S.A. 17-6709. We fully recognize and adhere to the broad

public policy of this state as set forth by the legislature in K.S.A. 44-1001. However, we do not believe that public policy against discrimination goes so far as to mandate that a totally innocent successor to a prior corporate employer should be held responsible for its predecessor's discriminatory practices unless one of the exceptions in *Comstock* applies. If there was any showing that the business of Service had been transferred to National in an attempt to evade the award due Mrs. Howell or to perpetrate a fraud upon her then the case would fall squarely under the fourth exception in *Comstock*. However, it is conceded that no such motives were involved in the sale to National.

Appellant contends that *Flanigan v. Leavenworth Recreation Commission*, 219 Kan. 710, 549 P.2d 1007 (1976), at least inferentially supports the application of the doctrine of remedial successorship liability. *Flanigan* is not in point and involved a totally different factual setting and the liability of a municipal corporation for alleged discriminatory employment practices. In *Flanigan* the claimant had a grievance against his employer, the Leavenworth Recreation Commission, and received an award from the KCCR. On appeal summary judgment was entered setting aside the KCCR's order on the grounds that the Leavenworth Recreation Commission had ceased to exist and there was no person or agency responsible for its outstanding obligations. The recreation commission was a joint enterprise of the City of Leavenworth and its school district. Subsequent to the entering of the award by the KCCR, the recreation commission was abolished and the city assumed its functions and combined them with those of the park system. We held the City of Leavenworth could not avoid liability by abolishing the recreation commission and that the city was its legal successor. If there is any analogy to the obligation of a private successor corporation, it would appear to be more in the nature of the liability of a successor corporation after a merger or consolidation. We do not find *Flanigan* applicable to the facts in this case. We hold that an award against a corporation based upon discriminatory employment practices is the same as any other unsecured debt and the general rules applicable to the liability of a successor corporation for its predecessor's debts apply to such an award. The trial court did not commit error in its ruling.

Next the KCCR asserts the trial court was in error in entering judgment for Mr. Clipner.

In *McFeeters v. Renollet,* 210 Kan. 158, 500 P.2d 47 (1972), we recognized the general rule as to tort liability of corporate officers.

"It is true, as defendants suggest, that a director or officer of a corporation does not incur personal liability for its torts merely by reason of his official character. If, however, an officer commits or participates in the commission of a tort, whether or not it is also by or for the corporation, he is liable to third persons injured thereby, and it does not matter what liability attaches to the corporation for the tort. (19 Am. Jur. 2d, Corporations, § 1382, p. 778.) It is well settled in this jurisdiction that an officer or agent of a corporation who violates a duty owed to third persons is liable to such persons." p. 161.

In *Van Scoyk v. St. Mary's Assumption Parochial School,* 224 Kan. 304, 307, 580 P.2d 1315 (1978), we recognized that an independent tort action would lie against a person alleged to be guilty of employment discrimination after all administrative remedies had been exhausted.

While it is possible that the claimant might have proved that Mr. Clipner was guilty of discriminatory acts or pierced the corporate veil of Service before the KCCR, resulting in personal liability, she chose to amend her complaint to specifically eliminate any representatives of Service. Having done so she can not now attempt to assert liability against Mr. Clipner in this collection proceeding. Assuming that Service could be shown to be the alter ego of Clipner or that Mr. Clipner was personally responsible for the discriminatory acts against Mrs. Howell, that showing should have been made before the KCCR with Clipner being named a party. He was not named a respondent in the KCCR proceedings. To the contrary, the complaint was amended to specifically exclude the representatives of Service which would include Mr. Clipner. Mr. Clipner was not given any notice or opportunity to be heard on an adjudication of a claim of *personal* liability. Nor did he have any opportunity for conciliation or settlement of any alleged personal liability.

We hold that in an action to enforce an employment discrimination award pursuant to K.S.A. 44-1011, individual officers, directors or employees of the original corporate offender may not be held liable unless such individuals were joined in the original discrimination proceedings before the KCCR and their liability established in those proceedings. Enforcement of the KCCR order based upon Mrs. Howell's amended complaint naming

*only the company* cannot be had against Clipner in this proceeding.

The judgment is affirmed.