Allen Shelton Smith County Attorney 205 South Main, Box 286 Smith Center, Kansas 66967
Dear Mr. Shelton:
As the County Attorney for Smith County, you inquire whether an interlocal agreement designating certain areas for neighborhood revitalization signed by a school district is still valid and binding upon the new school district created through the statutory process of consolidation. You advise that Unified School District 238, Smith County West (USD 238) had signed three neighborhood revitalization interlocal agreements prior to consolidating with Unified School District 324, Phillips County Eastern Heights (USD 324). USD 324 has not participated in any neighborhood revitalization agreements. The new school district is Unified School District 110 (USD 110). You also indicate that several new structures have been built within the revitalization areas and the property owners have taken advantage of the property tax rebate.
The Kansas Neighborhood Revitalization Act (Act) is a method where property owners in a designated area are encouraged to improve their properties through the use of property tax rebates.[1] Municipalities, as defined in the act, may agree to rebate all or a portion of the property tax generated by those improvements for a specified period of time.[2] A school district is within the definition of a municipality.[3]
Participation by the affected municipalities within the area designated for revitalization is voluntary. Nothing in the Act requires all of the taxing entities to agree to rebate their portion of any incremental increase in property tax generated by improvements. The mechanism used for participating municipalities is an interlocal agreement.[4] The Act leaves plan specifics to the participating members and does not address withdrawal or opting out of the revitalization program once it is underway. One of the interlocal agreements adopting a neighborhood revitalization plan by USD 238 establishes the terms for participation and withdrawal.[5] The agreement provides that a participating municipality may withdraw upon twelve months notice.[6] The period for rebates extends through the life of the adopted plan, which is ten years.[7]
Next, we consider the impact of school district consolidation upon neighborhood revitalization and the attendant interlocal agreement. The consolidation of school districts is a straightforward procedure wherein an agreement is reached, approved by the State Board of Education and the proposal placed before the district's voters.[8] If approved, the districts are consolidated into a new school district. In the consolidation agreement between USD 324 and USD 238 there is no mention of any existing contractual agreements for either district and their disposition. The statute provides that the newly created school district "shall become liable for and pay all lawful debts of the school districts which were consolidated except as may be otherwise provided by the consolidation agreement for bonded indebtedness."[9] Given this statutory language, we next consider whether the tax rebate qualifies as a debt and is binding upon the successor district.
Debt is defined as "liability on a claim. . . ."[10] The Act provides that, "upon approval of [a rebate application] . . . the municipality shall rebate all or a part of incremental increases in ad valorem property tax resulting from improvements."[11] The interlocal cooperation agreement incorporates the revitalization plan which obligates the municipalities to rebate to eligible property owners all or part of the property taxes on designated properties. This means that if a taxpayer complies with the criteria specified in the revitalization plan, a municipality is required, upon payment of taxes, to issue the rebate.
The fact that a school district which was a signatory to an interlocal cooperation agreement has been consolidated into a new district should not void the prior school district's obligations under the Act. InFuller v. Consolidated Rural High-School District No. 1, [12] the Kansas Supreme Court concluded that a newly consolidated school district was bound by a teacher contract entered into by the school district that was subsequently consolidated:
 "When, as in this instance, consolidation takes place and a new corporation comes into existence . . . the consolidated district takes the property and pays the debts."[13]
This conclusion is in accord with the general proposition that dissolving a public agency does not void its outstanding obligations.[14] In Flanigan v. Leavenworth RecreationCommission, [15] the Kansas Commission of Civil Rights (KCCR) entered an award of damages against the Leavenworth Recreation Commission (Commission) for unlawful employment discrimination. The Commission was a joint effort on the part of the city and school district. After the award was imposed, the city and the school district dissolved the Commission and the city formed its own park and recreation department.
The Kansas Supreme Court determined that the city was the defacto and de jure successor to the recreation commission and, thus, liable for the award. In doing so, the Court applied a principle of corporate law to a municipal corporation: "where one corporation goes entirely out of existence by being annexed or merged in another, if no arrangements are made respecting the property and liabilities of the corporation that ceases to exist, the subsisting corporation will be entitled to all the property and answerable for all the liabilities."[16]
While there are no appellate court decisions addressing whether a neighborhood revitalization interlocal cooperation agreement entered into by a school district that is later consolidated with another district is binding on the newly consolidated district, it is our opinion, based upon the analysis in Fuller and Flanigan, that the consolidated district is bound, and therefore, must honor the agreement entered into by the former school district.
We note that the consolidated unified school district has the statutory authority to "take such other actions as it deems necessary to provide for the maintenance, finance, and operation of the consolidated unified school district."[17] Therefore, the new district may decide to terminate its participation in the neighborhood revitalization agreements by giving the required notice. However, it will be bound by applications submitted prior to the termination date.
Sincerely,
 Steve Six Attorney General
 Michael J. Smith Assistant Attorney General
SS:MF:MJS:jm
[1] K.S.A. 12-17,114 et seq.
[2] K.S.A. 12-17,115(b) refers to K.S.A. 10-1101 for the definition of a municipality.
[3] K.S.A. 10-1101(a) defines a municipality as "any county, township, city municipal university, school district, community college, drainage district and any other taxing district or political subdivision of the state which is supported with tax funds."
[4] K.S.A. 12-17,119.
[5] Minutes, USD 238, Board of Education, April 14, 2008.
[6] Interlocal Cooperation Agreement Relating to Administration of Neighborhood Revitalization Plans for Taxing Districts within Smith County, Kansas, dated May 17, 2008.
[7] Id. Exhibit C.
[8] K.S.A. 72-8701 et seq. sets forth the requirements for the consolidation of two or more school districts.
[9] K.S.A. 72-8708.
[10] Black's Law Dictionary, 330 (7th ed. 2000).See K.S.A. 2007 Supp. 12-105b for a description of the uniform procedure for payment of claims by a municipality. K.S.A. 2007 Supp. 12-105a
defines "municipality" and "claim."
[11] K.S.A. 12-17,118(d). Emphasis added.
[12] 138 Kan. 881(1934).
[13] Id. at 883. Reaffirmed in Shirley v. School Board DistrictNo. 58, 183 Kan. 748 (1958).
[14] Flannigan v. Leavenworth Recreation Commission, 219 Kan. 710,714-15 (1976).
[15] Id.
[16] 219 Kan. at 716, citing Vandriss v. Hill, 58 Kan. 611, 613
(1897).
[17] K.S.A. 2007 Supp. 72-8709.