**Douglas SHANE**

v.

**HOBAM, INCORPORATED.**

**Civ. A. No. 69–626.**

United States District Court,
E. D. Pennsylvania.

June 15, 1971.

Paul Minkoff, Klousky, Kuby & Harris, Philadelphia, Pa., for plaintiff.

Thomas E. Byrne, Jr. and Thomas E. Byrne III, Krusen, Evans & Byrne, Philadelphia Pa., for defendant.

## OPINION AND ORDER

HIGGINBOTHAM, District Judge.

## I. INTRODUCTION

On June 17, 1968 the plaintiff, Douglas Shane, allegedly sustained serious injuries while operating a meat grinding machine in his place of employment, Shane Enterprises, Inc., in Chester, Pa. The meat grinding machine operated by the plaintiff at the time of the accident was manufactured and sold in 1948 by the John E. Smith's Sons Co. of Buffalo, New York. In June, 1962, the defendant, Hobam, Inc., purchased the assets of the Smith Company. The plaintiff alleges that from the time of the purchase of the assets of Smith until the time of the accident, the defendant operated the John E. Smith's Sons Company under its original name as a division of Hobam, Inc. In the present action, the plaintiff seeks to hold Hobam liable for any damages arising from defects in the design, manufacture and delivery of the meat grinding machine manufactured by the Smith Company in 1948.

Two questions are raised by the defendant's motion for summary judgment: First, whether Hobam, Inc. can be held liable, either under a theory of strict liability or a theory of breach of a duty of reasonable care, for physical injuries and consequent damages resulting from alleged defects in the manufacture, design and delivery of the meat grinding machine by Smith in 1948; and second, whether the first issue may appropriately be resolved on a motion for summary judgment. After considering the issues raised by the present motion, I have concluded that defendant's motion for summary judgment should be granted in part and denied in part.

## II. THEORIES OF LIABILITY

### A. INTRODUCTION

■ The general rule is that "a mere sale of corporate property by one company to another does not make the purchaser liable for the liabilities of the seller not assumed by it." Copease Mfg. Co. v. Cormac Photocopy Corp., 242 F. Supp. 993 (S.D.N.Y.1965).[1] There are, however, certain exceptions to this rule. Liability for obligations of a selling corporation may be imposed on the purchasing corporation when (1) the purchaser expressly or impliedly agrees to assume such obligations; (2) the transaction amounts to a consolidation or merger of the selling corporation with or into the purchasing corporation; (3) the purchasing corporation is merely a continuation of the selling corporation;

---

1. The agreement for the purchase and sale of assets entered into between Smith and Hobam provided that the "validity and interpretation of this agreement shall be governed by the laws of the State of New York." (¶21).

or (4) the transaction is entered into fraudulently to escape liability for such obligations. Kloberdanz v. Joy Manufacturing Co., 288 F.Supp. 817, 820 (D. Col.1968).

### B. INTENTION OF HOBAM AS EVIDENCED BY THE AGREEMENT FOR THE SALE OF ASSETS

As the first ground for opposing the entry of summary judgment, the plaintiff contends that certain questions of material fact regarding Hobam's intention to assume responsibility for product liability claims in respect to equipment manufactured by Smith prior to 1962 arise from alleged ambiguities and conflicts in the "AGREEMENT FOR PURCHASE AND SALE OF ASSETS" (hereinafter "the Agreement"). Concerning this first contention, I conclude that the Agreement itself creates no issue of material fact concerning the explicit intention of Hobam to assume responsibility for product liability claims in regard to equipment manufactured by Smith prior to the effective date of the agreement. Paragraph 14 of the Agreement provides that "Smith shall indemnify Hobam against all claims arising out of breach of contract (other than breach of warranty) *and product liability* arising from sales or contracts of sale made by Smith prior to June 30, 1962." (Emphasis added) As between Smith and Hobam, this provision leaves no doubt that Smith is to bear ultimate responsibility for any product liability claim assessed against Hobam in regard to

equipment manufactured and sold by Smith prior to June, 1962.[2] The other provisions of the agreement cited by plaintiff do not create material issues of fact arising from any conflict of ambiguity between these provisions and the product liability indemnity provisions of Par. 14.[3] I therefore find that the Agreement did not explicitly provide for (or create any issue of material fact concerning) the responsibility of Hobam for any product liability claims arising in regard to equipment manufactured and sold prior to June, 1962. I therefore conclude that pars. 4, 13 and 14 of the agreement did not indicate an intention by Hobam to assume responsibility for product liability claims in regard to equipment manufactured and sold by Smith prior to June, 1962.

### III. HOBAM'S HOLDING ITSELF OUT AS THE SMITH COMPANY: THE DUTY TO IMPROVE PRODUCT SAFETY AND NOTIFY PAST PURCHASERS OF SIGNIFICANT IMPROVEMENTS IN PRODUCT SAFETY

As a second basis for holding Hobam responsible for the damages derived from the accident in question, the plaintiff alleges that from June, 1962 until the time of the accident in 1968, Hobam "represented itself as operating the manufacturing company, John E. Smith Sons and Co., as one of its divisions." Further, according to par. 14 of the Agreement, Hobam assumed responsibility for any expense incurred in the normal servicing and adjusting of machines

---

2. The present record is unclear whether the corporation which remained after the sale of Smith's assets to Hobam is still in existence. If that successor corporation is not now in existence it is unclear to whom Hobam (or the present plaintiff) might look to recover for any product liability claim which properly could have been assessed against Smith had it remained in existence.

3. Par. 4 excludes from the term liabilities, only for the purpose of price computation, certain liabilities payable by Smith before the closing date of the Agree-

ment. These liabilities include "all amounts expended by Smith in settling * * * product liability claims arising from sales or contract of sale made by Smith on or after this date. * * *" Par. 13 provides that "Smith agrees to indemnify and hold Hobam harmless from any and all claims of creditors of Smith and from any and all liabilities as defined in Par. 4 hereof." These two provisions, when read together and in light of the specific indemnity agreement of Par. 14, create no ambiguity or issue of material fact.

sold by Smith "even though they may have been sold prior to June 30, 1962." The plaintiff asserts that "there is a duty to continuously test and develop a product safely which attaches to Hobam, Inc. as a seller of machinery products." Because Hobam held itself out as operating the John E. Smith's Sons Co. and continued to manufacture meat grinding equipment, the plaintiff appears to argue that Hobam owed all users of this line of equipment manufactured by the John E. Smith's Sons Co. the duty of reasonable care in testing and developing the safety of products manufactured after June, 1962, and of warning prior purchasers of any defects which subsequent testing disclosed, or at least should have disclosed, between the date of purchase of Smith by Hobam and the time of the accident.

The basic issue presented by this case was considered in Chadwick v. Air Reduction Co., 239 F.Supp. 247 (E.D.Ohio, 1965). In *Chadwick,* the plaintiff was injured in 1963 by an incubator manufactured and sold in 1952 by the Gordon Armstrong Co. In 1961, Gordon Armstrong sold all its assets to the Air Reduction Company. As a basis for assessing liability against the Air Reduction Company for injury caused by the incubator manufactured by Gordon Armstrong, the plaintiff in *Chadwick* alleged that "at the time of, and subsequent to, the acquisition of the assets of the Gordon Armstrong Company, the Air Reduction Company had knowledge of other claims against Gordon Armstrong arising out of the defective design of baby incubators." Because of this knowledge the plaintiff contended that the purchasing corporation was under a duty to notify the past purchasers of the incubator of the danger presented by the incubator manufactured and sold by the Gordon Armstrong Company.

In *Chadwick,* the court stated that the issue presented was "whether a corporation which purchases the assets of another corporation, and as a consequence of purchase becomes aware that the seller corporation had put a negligently designed device into the channels of commerce, is under a duty to warn third persons of its vendor's negligence." 239 F.Supp. at 249. The court noted that in regard to this question neither counsel had cited "any authority directly in point, and independent research has failed to disclose any such decision." (239 F.Supp. at 250)[4] Finding no authority directly in point, the court nevertheless concluded that the defendant had no duty to warn prior purchasers of the incubator's known defects.

To support this conclusion, the court relied by analogy on cases "where the peril to the plaintiff has come from a source in no way connected with the defendant's conduct or enterprises or undertakings, past or present, but where the defendant has it in his power by taking some reasonable precaution to remove the peril."[5] The cases which the court cited essentially concern the situation of a so-called Good Samaritan where "the law has traditionally found no duty, however reprehensible and unreasonable the defendant's failure to take the precaution may be." According to this principle, "no ordinary bystander is under a duty to attempt the rescue of a child from drowning in what he knows to be shallow water." 2 Harper and James, Torts, p. 1046.

The direct application of the principles of the reluctant or cold-hearted Good Samaritan to the circumstances of *Chadwick* was not adequately explained by the court. There was no indication in the court's opinion whether (1) the Air Reduction Company had assumed the ongoing operation of the Gordon Arm-

---

4. The research of the court and counsel in the present matter also has failed to disclose any decision directly in point.

5. The court here cited cases discussed under the heading, "The Duty of Affirmative Action," §§ 18.6, Harper and James, The Law of Torts.

strong Company in the manufacture of incubators, and (2) whether the successor company had maintained any relationship with the customers of Gordon Armstrong in servicing units sold before the date of acquisition and in attempting to sell new units manufactured by the Air Reduction Company after the date of acquisition. In light of my view of the relevant standards for evaluating the responsibility of a successor corporation, these questions should have been considered by the court in *Chadwick*.

Under the facts of the present case, the application of the Good Samaritan approach of *Chadwick* to the product liability and negligence questions presented here would be inappropriate. In the case before me, the defendant can hardly be said to be an innocent bystander, "in no way connected with defendant's conduct or enterprises or undertakings, past or present." Here, it is alleged that after the purchase of the assets of the Smith Company, Hobam continued to operate this company under its original name (John E. Smith's Sons Co.,) as one of the divisions of Hobam.[6] The Agreement provided that "the entire right to the use of Smith's corporate name and all good will of Smith's business" was "expressly included in the assets" purchased by Hobam. (¶11) Further, the agreement contemplated that Hobam would continue to have responsibility for servicing equipment previously manufactured and sold by the Smith Company. Paragraph 14 of the Agreement provides: "Anything to the contrary notwithstanding, Smith shall not be liable to Hobam for any expense incurred in the normal servicing and adjusting of machines sold by Smith even though they may have been sold prior to June 30, 1962." In light of these circumstances, there is no basis to treat Hobam as an innocent bystander in regard to the affairs of the Smith Company. As to any products sold *after* taking over

the manufacturing operations of the Smith Company, Hobam had the responsibility to test and where necessary improve the product in light of contemporary advances in product safety, design and manufacture.

In conclusion, defendant is entitled to a partial summary judgment but several gaps in this case preclude my granting defendant's motion for summary judgment on other issues. First, the record is unclear as to whether the meat grinder in question was ever serviced by Hobam after Hobam's acquisition of the Smith Company in 1962. Further, it is not clear whether Hobam, in the period between its acquisition of Smith and the date of the accident, acquired knowledge which indicated the meat grinding machine manufactured in 1948 was defective.

If Hobam actually knew that the previously manufactured machine was significantly defective, was Hobam obligated to advise all of Smith's previous customers of the nature of the defect? Was Hobam obligated to notify all original purchasers of the nature of the defect even when the original purchasers were no longer serviced by Hobam and had no other business relationship with Hobam? Plaintiff is treading on uncharted precedential seas and while there may be a serious question as to whether he has tipped the balance of precedent in his favor, I am reluctant to, and therefore will not, grant a summary judgment before pertinent factual gaps in the present case are filled in, thereby permitting the above questions to be answered with greater precision.

■■ On the issue whether Hobam is liable for the present product liability claim solely by reason of its purchase of Smith's assets, defendant's motion for summary judgment is granted. As to the issue whether Hobam is responsible on a product liability or negligence ra-

---

6. The Agreement provided that within 10 days following the effective date of the Agreement, "Smith will cause its corporate name to be changed to a name hav-ing no similarity to its present name and will not thereafter resume the use of any corporate name similar to its present name."

tionale by reason of any knowledge which Hobam acquired or should have acquired of any significant defect in meat grinding equipment after Hobam's acquisition of Smith, the issue is left open for further discovery. Therefore, as to that issue alone, defendant's motion for summary judgment is denied. In denying defendant's motion for summary judgment on the latter issue I do not mean to imply that even on the present state of the record plaintiff would be entitled to have the issue submitted to a jury.